**HOUSE GRAIN COMPANY, Appellant,**

v.

**Paul OBST, Karl Obst and Edwin Obst, Appellees.**

No. 13–82–210–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 13, 1983.

Rehearing Denied Nov. 10, 1983.

Richard Smith, Henrichson & Smith, P.C., Edinburg, Wm. M. Schur, Fort Worth, for appellant.

Walter J. Passmore, Ewers & Toothaker, McAllen, for appellees.

Before YOUNG, KENNEDY and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This is an arbitration case. Appellant and appellees entered into two contracts for the purchase by appellant from appellees of a quantity of corn. The dispute arose between the parties over the amount of corn contracted for. It was agreed by all parties that the question would be resolved by arbitration before the Texas Grain and Feed Association Arbitration Committee. The Arbitration Committee ruled in appellant's favor and ordered appellees to pay appellant a monetary award. Appellees brought suit ostensibly under the provisions of Tex. Rev.Civ.Stat.Ann. arts. 234, 235 (Vernon Supp.1982) to have the arbitration award set aside. After a trial before the court, the award was vacated. We reverse and render.

Sometime prior to February 5, 1980, Dennis Edwards, an employee of appellant, contacted appellee, Karl Obst, concerning the purchase of a quantity of corn. Karl Obst, acting on his own behalf and on behalf of his partner and brother, Paul Obst, and on behalf of his brother Edwin Obst who was also in the grain business, agreed to sell a quantity of corn to appellant. Subsequently, contracts were forwarded to the parties evidencing the agreements. The contracts were identical forms which specified under the column entitled quantity the term "5 C/L". Pursuant to these contracts, the Obst Brothers shipped one million pounds of corn to appellant. After receiving its last shipment of corn, appellant claimed the order and contract required the appellees to ship two million pounds of corn and demanded the remainder of the shipments. When no agreement could be reached concerning the amount of corn required to be shipped under the contract, the matter was voluntarily submitted to arbitration.

On January 27, 1981, the arbitration hearing was held before the primary arbitration committee of the Texas Grain and Feed Association in Ft. Worth. James House represented appellant. Appellees were represented by Karl Obst and their attorney, Walter Passmore. Both parties offered testimony supporting their positions. The ar-

bitration committee rendered an award for appellants and ordered Edwin Obst to pay $29,599.13 and Paul and Karl Obst $20,-134.81 to appellants.

Appellees brought suit in the district court of Hidalgo County to set aside the arbitration award, alleging that the arbitration board had made a "gross mistake" and that the panel was biased and partial to appellant. At the conclusion of the trial, the trial court vacated the arbitration award and made findings of fact and conclusions of law that there was an appearance of an impropriety in the arbitration panel and that the panel made a gross mistake in interpreting C/L to mean jumbo hoppers.

 Before discussing the appellant's points of error, we must first establish the legal framework within which a Court becomes involved in voluntary arbitration proceedings. Arbitration is a proceeding favored in Texas Law. *Brazoria v. Knutson,* 142 Tex. 172, 176 S.W.2d 740 (1944). The award in question is based on a common law arbitration hearing, as opposed to a statutory arbitration hearing, as provided for by Tex.Rev.Civ.Stat.Ann. arts. 224–249 (Vernon Supp.1982). We, therefore, feel, at least as to the grounds for setting aside an award, that Tex.Rev.Civ.Stat.Ann. art. 237 (Vernon 1973), is not applicable. The common law of this state concerning the setting aside of an arbitration award was stated in *Carpenter v. North River Insurance Company,* 436 S.W.2d 549 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). That test is whether or not the award is "tainted with fraud, misconduct, or such gross mistake as would imply bad faith and failure to exercise honest judgment." *Carpenter* 436 S.W.2d at 551. Statutory arbitration is merely cumulative of the common law. *L.H. Lacey Company v. City of Lubbock,* 559 S.W.2d 348 (Tex.1977). Since arbitration awards are favored by the courts as a means of disposing of pending disputes, every reasonable presumption will be indulged to uphold the proceeding. *City of San Antonio v. McKenzie Construction Company,* 136 Tex. 315, 150 S.W.2d 989 (1941); *Inter-*

national Brotherhood of Electrical Workers, Local Union Number 59 A.F.L. v. Whitley, 278 S.W.2d 560 (Tex.Civ.App.—Waco 1955, writ ref'd n.r.e.). A mere mistake of fact or law alone is insufficient to set aside an arbitration award. *Grand International Brotherhood of Locomotive Engineers v. Wilson*, 341 S.W.2d 206 (Tex.Civ.App.—Ft. Worth 1961, writ ref'd n.r.e.); *Ferguson v. Ferguson*, 93 S.W.2d 513 (Tex.Civ.App.—Eastland 1936, writ dism'd).

Although appellee stated in his pleadings that this suit was brought under art. 237, a review of the document indicates he actually pled for common law relief. We will, therefore consider this a common law arbitration case.

In his first point of error, appellant challenges the sufficiency of the evidence to support the trial court's findings and conclusions that the arbitration panel committed a "gross mistake" in interpreting the term C/L to mean jumbo hopper cars. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L. Rev. 359 (1961).

■ The first question raised by appellant's first point of error is what constitutes a "gross mistake" so as to justify the setting aside of a common law arbitration award. A "gross mistake" is a mistake which implies bad faith or failure to exercise honest judgment. *City of San Antonio v. McKenzie Construction Company*, 136 Tex. 315, 150 S.W.2d 989 (Tex.1941); *National Automobile and Casualty Insurance Company v. Holland*, 483 S.W.2d 28 (Tex. Civ.App.—Dallas 1972, no writ); *Brown v. Eubank*, 443 S.W.2d 386 (Tex.Civ.App.— Dallas 1969, no writ); *Albert v. Albert*, 391 S.W.2d 186 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.); *Bullard v. Austin Real Estate Board, Inc.*, 376 S.W.2d 870 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.

e.); *Smith v. Barnett*, 373 S.W.2d 762 (Tex. Civ.App.—Dallas 1963, no writ); *Johnson v. American Can Company*, 361 S.W.2d 451 (Tex.Civ.App.—Houston 1962, no writ).

■ It should be noted here that no transcription of the arbitration proceedings was offered into evidence. Therefore, we must presume adequate evidence to support the award. *City of San Antonio v. McKenzie Construction Company*, 150 S.W.2d at 996. The arbitration committee's decision recites that the contracts were subject to the rules of the L.A. Grain Exchange. The L.A. Grain Exchange Rules provide that grain was to be loaded in jumbo hopper cars. Apparently, it is understood within the grain trade that a jumbo hopper car is the equivalent of 200,000 pounds. Therefore, the arbitration panel found the contracts between the parties to have called for the shipment of 10 jumbo hopper cars or two million pounds of corn. The appellees offered extensive testimony to the effect that the application of the L.A. Grain Exchange Rules by the arbitration committee was incorrect. All three of the Obst brothers testified that, in their opinion, the term C/L meant a car load, or 100,000 pounds, and that this was the definition given the term by the Texas Grain and Feed Association Rules. They additionally testified that they had always used the Texas rules in their past dealings with appellant. B.G. Muller, a grain broker who had previously brokered grain sales between the parties, also testified that the term C/L meant car load, or 100,000 pounds. He further testified that, in his opinion, the contract between the parties was subject to the Texas rules. Tom Dawson, a local grain elevator operator, also testified that the term C/L meant car load.

The contract between the parties provides that "[t]his contract is made subject to the rules of the L.A. Grain Exchange . . . .".

■ It is unclear from the record before us what evidence the arbitration committee had before them concerning the definition of C/L. However, it is undisputed that the overwhelming majority of the evidence

heard by the trial court concerning the appropriate definition of C/L was *not* heard by the arbitration committee. There is insufficient evidence to support the trial court's finding that the arbitration committee made a mistake which implied bad faith or failed to exercise honest judgment: that they made a "gross mistake".

■ We are not persuaded by appellees' arguments attempting to support their theory of "gross mistake" based on the theory of gross inadequacy. Their argument is that since the arbitration committee's finding was twice the amount of grain shipped by appellee, any finding so greatly in excess of the actual facts indicates a total disregard of the truth and a deliberate idea to injure the appellee. What the arbitration committee found was exactly what the appellant claimed they were entitled to under the contract. The fact that this is twice or even ten times what the appellee *thought* the contract meant is without bearing on the issue.

■ It is not necessary for us to determine the proper construction of the contract between the parties. Nor was it proper for the trial court to have undertaken such a task. The appellee, who had the burden of proof below, failed to offer sufficient evidence to show that the arbitration committee made a "gross mistake." The trial court should have restricted its review to that evidence which was before the arbitration committee and not allowed appellee to essentially relitigate the arbitration proceedings. Appellant's first point of error is sustained.

Appellant's second point of error alleges error by the trial court in finding that there was an appearance of impropriety in the arbitration committee decision. We will assume that this point of error can be construed as another no evidence/insufficient evidence point. As was previously stated, the trial court found that there was an appearance of impropriety in the arbitration committee panel. Thus, appellant's second point of error raises the question of what constitutes impropriety or bias by an arbitration committee. The leading case on this issue is *Commonwealth Coating Corpo-*

*ration v. Continental Casualty Company,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), wherein it was held that an arbitrator, like a judge, must avoid even an appearance of bias. The court goes on to hold that arbiters must "disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coating,* at 149, 89 S.Ct. at 339. Under the facts of the *Commonwealth Coating* case, there was an ongoing, direct business relationship between one of the parties and one of the arbiters.

While we fully agree with the holdings of *Commonwealth Coating,* we feel the construction given that decision by the trial court, and argued for by appellee, is far too stringent.

The facts of this case indicate that years prior to the hearing, appellant had done business with a grain elevator company which employed one of the arbiters. The testimony also revealed that twenty to twenty-five years prior to the hearing appellant had done business with a Mr. Wendland. At the conclusion of the hearing, James House, representing appellant, inquired of committee member Larry Alley about Mr. Wendland and was informed that he (Mr. Wendland) had died. The only other evidence of impropriety cited by appellee is the testimony of Mike Obst, appellee Edwin Obst's son, who was present at the arbitration committee hearings in Fort Worth. Mike Obst testified that he saw James House in the private office of Ray Nolan immediately prior to the hearing. Ray Nolan was the executive vice president of the Texas Grain and Feed Association. James House specifically denied being in Nolan's office prior to the hearing. Two of the arbitration committee members testified, by deposition, that James House was in Nolan's office immediately prior to the hearing.

■ We are not persuaded by the language of the *Commonwealth Coating* case, nor appellee's arguments in support of that case, to give that case the literal interpretation given it by the trial court. In order for an arbiter to be disqualified for

908

failure to disclose a past relationship with a party, there should be some showing that the relationship is ongoing and direct and not speculative and remote. *United States Wrestling Federation v. Wrestling Division of the A.A.U., Inc.,* 605 F.2d 313 (7th Cir. 1979). Of even more significance is the knowledge on the part of the arbiter of the existence of the undisclosed relationship. See *Overseas Private Investment Corp. v. Anaconda Corp.,* 418 F.Supp. 107 (D.C.D.C. 1976). There is absolutely no evidence that either arbitor C.L. Moore or Larry Alley was even aware of the alleged relationship between themselves and appellant. Simply stated, we are unable to see how the extremely remote relationship between two of the arbiters and appellant, or the presence of James House in Ray Nolan's office prior to the hearing, constitute sufficient evidence of impropriety or bias so as to justify the setting aside of the arbitration committee's award, even under the most liberal constructions of the *Commonwealth Coating* case. Appellant's second point of error is sustained.

The judgment of the trial court is REVERSED and RENDERED that the arbitration committee award be reinstated.