**Donna C. KLINE, Appellant,**

v.

**John M. O'QUINN, Thomas J. Pearson, and Bank One, Texas, N.A., Appellees.**

**No. A14–93–00187–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 24, 1994.

Supplemental Opinion Modifying Judgment but Otherwise Denying Rehearing May 12, 1994.

Norman Riedmueller, Michael A. Pullara, Houston, for appellant.

J. Clark Martin, Steven R. Borgman, Cheryl E. Irvin, Houston, for appellees.

Before MURPHY, ELLIS and SMITH,* JJ.

## MAJORITY OPINION

JACKSON B. SMITH, Jr., Justice (Retired).

This is an appeal from a judgment modifying an arbitration award which was rendered in favor of appellant, Donna Kline, and against John O'Quinn and Thomas Pearson. The judgment modified the arbitration award by deleting punitive damages assessed against appellee, O'Quinn and ordered that Kline take nothing in a trial against appellee, Bank One (successor-in-interest to MBank, N.A.). Although his name appears on the appeal bond, Pearson did not file a brief or raise points of error.

This dispute between attorneys arose out of a contract for contingent attorney's fees. On March 30, 1988, Kline and Pearson entered into an agreement with O'Quinn whereby O'Quinn agreed to pay expenses and assist on certain toxic tort and personal injury cases in return for a share of the attorney's fees ("the first attorneys' agreement"). Pursuant to their agreement, O'Quinn advanced substantial sums of money to Kline and Pearson. After signing the first attorneys' agreement, Kline and O'Quinn became aware that Bank One was a creditor of Pearson and that the bank claimed an interest in Pearson's share of attorney's fees in cases covered by the attorneys' agreement. As a result, Kline, Pearson and O'Quinn executed a second agreement ("the second attorneys' agreement").

Both agreements detailed a fee-sharing arrangement and contained a binding arbitration clause. In addition, the second attorneys' agreement acknowledged the existence of Bank One's interest and allocated to the bank a portion of Pearson's share of fees in cases covered by the agreement. The agreement also provided that a portion of Pearson's fees would be used to repay O'Quinn for money he advanced to Kline and Pearson.

The agreement further provided for repayment of a Pearson debt to Kline. Finally, the agreement contained several provisions to protect the fee interests of Kline and O'Quinn. Among those provisions, was a condition that all settlement monies recovered in the cases covered by the agreement would be deposited in O'Quinn's client trust account for accounting and distribution.

Kline, Pearson, and O'Quinn then executed an agreement with Bank One ("the bank agreement"), which for the most part restated the provisions set out in the second attorneys' agreement, but did not contain an arbitration provision. Thereafter, recoveries, either by settlement or by judgment, were received by both O'Quinn and Pearson on cases covered by the second attorneys' agreement. However, Kline was paid only a portion of her share of fees or not paid at all.

On March 8, 1991, Kline filed suit against O'Quinn and Pearson, alleging breach of contract, breach of fiduciary duty, and breach of a duty of good faith and fair dealing because of their failure to pay her certain contingent attorney's fees. Kline's original petition specifically invoked the arbitration provision of the second attorneys' agreement and prayed "that the court order arbitration of the disputes between Plaintiff and Defendants O'Quinn and Pearson." Bank One was named as a defendant, but no wrongdoing was alleged against the bank as it was not a party to the second attorneys' agreement. O'Quinn then filed a plea in abatement with the court to stay the proceedings pending arbitration. The court took no action on O'Quinn's motion.

Pursuant to the second attorneys' agreement, Kline filed a demand for arbitration with the American Arbitration Association (AAA). Kline also submitted a copy of her original petition to the AAA. The parties proceeded to arbitration in May 1992, and on June 22, 1992, the three-member arbitration panel found in favor of Kline and ordered both O'Quinn and Pearson to pay damages.[1]

---

* Justice Smith sitting by assignment of the Texas Supreme Court.

1. O'Quinn was ordered to pay Kline $249,316.02 plus pre-award interest of $41,552.67 and post-

award interest. O'Quinn was also ordered to pay $50,000.00 in punitive damages. Pearson was ordered to pay Kline $105,523.20 plus pre-award interest of $17,587.20 and post-award in-

O'Quinn subsequently filed with the AAA, a "motion to partially modify and vacate arbitration." The arbitration panel affirmed its prior rulings and denied O'Quinn's motion on September 3, 1992. O'Quinn then filed a "motion to vacate, or alternatively, modify and correct arbitration award" in the trial court. That motion, like the earlier motion to the AAA, requested deletion of the $50,-000.00 punitive damages award assessed against O'Quinn by the arbitrators.

Shortly thereafter, Kline filed an "application for decree," seeking confirmation of the arbitration award in its entirety. She also filed a first amended original petition, seeking confirmation of the award and alleging, for the first time, causes of action against Bank One. That pleading also sought attorney's fees. Kline later amended her petition in the trial court to include a claim for punitive damages against O'Quinn in the event that the arbitration award was not confirmed in its entirety. O'Quinn also filed a motion opposing Kline's application for decree and a "motion for judgment," both of which sought to confirm the arbitration award, less punitive damages.

The pleadings and documents in the record show that the trial court held several hearings to resolve issues raised by O'Quinn's motion to vacate or modify. A record of what transpired at all those hearings is not before this court. However, notwithstanding the lack of a complete record, an examination of the pleadings and documents and a review of the record of the pre-trial hearing in the Bank One case, reflect the totality of the trial court's rulings. The trial court ruled that the arbitrators had exceeded their authority by awarding punitive damages and by ordering payment of the award within thirty days after the award was signed. The court also ruled that Kline could not recover attorney's fees. The court further ruled that it would confirm the arbitration award, less punitive damages against O'Quinn, but refused Kline's request to litigate that issue or the issue of attorney's fees. The trial court then ruled that it would not enter judgment confirming

the arbitration award as modified until the conclusion of the trial against Bank One.

The Bank One trial began on December 21, 1992. During the pre-trial hearing, the court ruled that because of its prior rulings, there were no issues to be litigated against O'Quinn; therefore, counsel for O'Quinn was not permitted to participate in the Bank One trial. After Kline rested, Bank One moved for a directed verdict and after hearing argument, the trial court granted the motion. The trial court's final judgment confirmed the arbitrators' award except for the punitive damages against O'Quinn, denied Kline's request for attorney's fees, and ordered that Kline take nothing from Bank One. Kline appeals from that final judgment raising three points of error. O'Quinn has since paid the compensatory damages of the final judgment and has filed a motion to dismiss this appeal.

Initially, we address O'Quinn's motion to dismiss. Exhibits attached to that motion reflect O'Quinn's payment and Kline's acceptance of compensatory damages plus interest pursuant to the trial court's final judgment. O'Quinn contends that Kline's acceptance of this payment satisfied the judgment and makes this appeal moot. O'Quinn's contention is without merit.

■ The general rule is that a party who accepts the benefits of a judgment is estopped from challenging the judgment by appeal. *Twin City Fire Ins. Co. v. Jones*, 834 S.W.2d 114, 115 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (citing *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1951)). There are two narrow exceptions to this rule. *Twin City*, 834 S.W.2d at 115; *River and Beach Land Corp. v. O'Donnell*, 632 S.W.2d 885, 888 (Tex.App.—Corpus Christi 1982, no writ). First, a party is not estopped from appealing if a reversal of the judgment could not possibly effect that party's right to the benefit accepted under the judgment. *Id.* (citing *Carle*, 234 S.W.2d at 1004); *River and Beach*, 632 S.W.2d at 888. Second, a party is not estopped from appealing if the economic circumstances are such

---

terest. Pearson was also ordered to pay $25,-000.00 in punitive damages. Kline was further awarded $1,261.23 from a case expense account

funded by O'Quinn and $500.00 remaining in her own client trust fund.

that the party's acceptance of the benefits was not voluntary. *Twin City,* 834 S.W.2d at 115; *River and Beach,* 632 S.W.2d at 888. This case falls within the first exception.

The compensatory damages paid by O'Quinn and accepted by Kline were never the subject of this appeal. By her appeal, Kline only seeks "further" recovery of the punitive damages deleted from the arbitration award and attorney's fees in confirming the award. Thus, reversal of the judgment would merely allow Kline to recover a sum of money in addition to compensatory damages already accepted by her and would have no effect on those benefits she has secured under the judgment. *See Baptist Memorial Hosp. Sys. v. Bashara,* 685 S.W.2d 352, 353–54 (Tex.App.—San Antonio 1984), *aff'd,* 685 S.W.2d 307 (Tex.1985) (held that hospital's acceptance of lien payment reduced by amount of attorney's fees of attorney representing injured client did not bar hospital from seeking higher lien payment on appeal). O'Quinn's motion to dismiss is denied.

In her first point of error, Kline contends "the trial court erred by rejecting rather confirming the arbitration award of exemplary damages against O'Quinn."

 The trial court's judgment setting aside the award of punitive damages against O'Quinn states that "... such award fail[ed] to conform either to the parties' arbitration agreement or the relief sought ..." and that "... the arbitrators exceeded the scope of their authority in attempting to award punitive damages." That "arbitrators exceeded their powers" is a statutory ground for vacating an award. TEX.CIV.STAT.ANN. art. 237, § A(3). That "arbitrators have awarded upon a matter not submitted to them" is a statutory ground for modifying or correcting an award. TEX.CIV.STAT.ANN. art. 238 § A(2). Here, the trial court did not vacate the arbitration award, it only modified the award by deleting the punitive damages against O'Quinn. Therefore, the only issue before this court is: was the issue of punitive damages submitted to the arbitrators?

It is undisputed that: (1) in Texas, punitive damages may be awarded under appropriate circumstances, *see Transportation Ins. Co. v. Moriel,* 37 Sup.Ct.J. 883, 889–92, 1994 WL 246568 (June 8, 1994) (opinion on motion for rehearing); (2) the trial court did not enter an order setting out the issues to be considered by the arbitrators or an order limiting the issues to be considered by the arbitrators; and, (3) the trial court did not know what evidence or issues were submitted to the arbitration panel because no record was made of the arbitration proceedings. Thus, the trial court's holding that the arbitration panel's award "failed to conform to the parties' arbitration agreement or relief sought" was of necessity limited to the construction of that agreement.

There is no dispute that the award was the result of binding statutory arbitration pursuant to the second attorneys' agreement, that the arbitration proceedings were in accordance with the Commercial Arbitration Rules rules of the AAA, that this court has jurisdiction, and that Texas law is applicable.

The second attorneys' agreement provided for *binding* arbitration in accordance with the rules of the AAA and that any court having jurisdiction could enter judgment on the award.

The arbitration provision in the second attorneys' agreement provided:

*Binding Arbitration.*—In the event that *a dispute* arises among the Parties hereto, the Parties covenant to endeavor in good faith to resolve the dispute amicably. In the event that *a dispute* arises among Parties that cannot be amicably resolved or, Parties have elected to terminate this Agreement and are unable to reach an agreement to that end, said dispute shall be determined by arbitration conducted in the City of Houston, State of Texas, in accordance with the rules then in force of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The expenses of arbitration shall be shared equally among or between the arbitrating parties but each party shall be responsible for the fees of its own counsel. Said arbitration shall take place within thirty (30) days of request by any party, unless any party to the arbitration shall be in trial at the time in which case it shall

take place within thirty (30) days after such trial is concluded.

[emphasis added].

Whether the parties' agreement imposes a duty to arbitrate a particular dispute is a matter of contract interpretation and a question of law for the court. *The Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ pending); *Lost Creek Util. v. Travis Indus. Painters,* 827 S.W.2d 103, 105 (Tex.App.—Austin 1992, writ denied). The law imposes a presumption in favor of arbitration which requires, whenever the scope of an arbitration is fairly debatable or reasonably in doubt, that the court decide the question of interpretation in favor of arbitration. *Babcock,* 863 S.W.2d at 230. This presumption is particularly applicable where the clause is. broad, purporting to cover all claims, disputes, and other matters relating to the contract or its breach. *See Babcock,* 863 S.W.2d at 230; *see also Lost Creek,* 827 S.W.2d at 105. Where there is a broad arbitration clause, arbitration of a particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Babcock,* 863 S.W.2d at 230; *Lost Creek,* 827 S.W.2d at 105.

Kline contends that the parties contemplated arbitration of her tort claims and thus, punitive damages, when they agreed to arbitrate "a dispute that arises among the parties." We agree. Ordinary principles of contact law require us to ascertain the true intentions of the parties as expressed in the *entire* contract. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). [emphasis added] Language used by the parties in contract should be accorded its plain grammatical meaning unless it definitely appears that the intentions of the parties would be thereby defeated. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). We must avoid, when possible and proper, a construction which is unreasonable, inequitable and oppressive. *Reilly v. Rangers Management Inc.,* 727 S.W.2d 527, 530 (Tex.1987).

Applying those principles to the above provision, we hold that the phrase, "a dispute that arises among the parties," in the absence of limiting language, encompasses Kline's tort causes of action and claim for punitive damages. *See USX Corp. v. West,* 781 S.W.2d 453, 455 (Tex.App.—Houston [1st Dist.] 1989, no writ) (holding that a "controversy" between parties may encompass different causes of action and claims for different types of damages, including punitive damages). Our broad reading of the arbitration provision is supported by O'Quinn's own pleadings. In his plea in abatement filed in the trial court prior to arbitration, O'Quinn declared that the arbitration provision provided for arbitration of "any and all controversies or claims arising out of or relating to the agreement."

Notwithstanding that pleading, O'Quinn now argues that the pleadings and proof submitted to the arbitrators by Kline do not support an award of punitive damages. There is nothing in our record to support or corroborate O'Quinn's argument. While a court may review whether a particular issue is within the scope of the parties' arbitration agreement, the enforcement of pleading requirements before the arbitrator is a procedural matter for the arbitrator. *See USX,* 781 S.W.2d at 456.

In *USX,* Energy Buyers Service Corp. (Energy Buyers) asserted several causes of action arising from USX Corp.'s (USX) alleged breach of a contract for the purchase of natural gas. 781 S.W.2d at 454. The First Court of Appeals refused USX's attempt to mandamus the trial judge to require him to grant a motion to compel arbitration of certain tort claims asserted by Energy Buyers. *Id.* The court's refusal was based in part on its broad reading of the arbitration provision in the contract. 781 S.W.2d at 454–56. The court reviewed both the arbitration agreement and documents filed in the pending arbitration before concluding that the claims asserted by Energy Buyers, including a claim for punitive damages, were before the arbitrator. 781 S.W.2d at 455–56. Although Energy Buyers' pleading did not specifically refer to punitive damages, the court held that the enforcement of pleading requirements

before an arbitrator is ordinarily a procedural matter for the arbitrator. *USX,* 781 S.W.2d at 456.

In so holding, the court in *USX* relied on *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In *Wiley,* a union sought to compel the corporate employer to arbitration pursuant to a collective bargaining agreement with the corporate employer who had merged with another corporation. 376 U.S. at 543, 84 S.Ct. at 911. At issue, was whether the collective bargaining agreement survived the merger and whether arbitrators could decide whether certain procedural prerequisites to arbitration set out in the agreement had been satisfied. *Id.* As to the latter issue, the U.S. Supreme Court held that *"once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."* *Id.* at 557, 84 S.Ct. at 918. [emphasis added] The court explained that "even under a contrary rule, a court could deny arbitration only if it could be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify the arbitral award." *Id.*

The court in *USX* also relied on *Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145 (5th Cir.1987). In *Webb,* a general contractor sought to compel the property owner and architect to arbitration. 823 F.2d at 146. The property owner and architect argued that the contractor did not comply with the contractual prerequisites to arbitration. *Id.* The district court made a finding to the contrary. 823 F.2d at 149. The court, citing *Wiley* and section 4 of the Federal Arbitration Act, vacated the district court's finding and held that only the arbitrators could decide the issue of the contractor's compliance. *Id.*

■ We agree with the holdings of *Wiley, Webb* and *USX.* O'Quinn's "pleadings" argument is not, as the U.S. Supreme Court explained, a "strictly procedural claim" which would operate to bar the arbitration altogeth-

er. Further, O'Quinn's claim bears on the final disposition of the parties' dispute in the sense that he seeks to interpret the scope of the arbitration agreement by reference to extrinsic evidence, i.e., Kline's pleadings. However, O'Quinn has never claimed that the parties agreement is ambiguous. In any event, the second attorneys' agreement specifically states that it "constitutes the entire agreement of the parties." Because we have already held that the arbitration provision in that agreement was broad enough to encompass Kline's tort causes of action and claim for punitive damages, we must defer to the arbitrators with regard to procedural matters such as the sufficiency of Kline's pleadings.

■ As to O'Quinn's argument that Kline did not prove in the arbitration that she was entitled to the punitive damages, we, like the trial court, do not have a record of the arbitration and are unable to determine what claims were submitted or what evidence was offered before the arbitrators. Without a transcription of the arbitration proceedings, we must presume adequate evidence to support the award. *House Grain Co. v. Obst,* 659 S.W.2d 903, 906 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

O'Quinn next asserts that relitigation of punitive damages is barred by the doctrine of *res judicata.* While that may be true, Kline seeks to litigate the issue of punitive damages only in the event that we find that such an issue was not within the scope of the parties' arbitration agreement. Because we have determined that the issue of punitive damages was within the scope of the parties' agreement, we need not address O'Quinn's res judicata argument.

■ O'Quinn further contends that an award of punitive damages in an arbitration violates due process under the U.S. and Texas Constitutions. This argument is without merit. O'Quinn asserts that punitive damages is a sanction reserved to the forum of the courts where there are procedural safeguards such as judicial review. Because O'Quinn did not raise this argument in the trial court, it was waived. *Johnson v. Lynaugh,* 800 S.W.2d 936, 939 (Tex.App.—

Houston [14th Dist.] 1990, writ denied). In fact, O'Quinn's only due process argument below was that he did not have sufficient notice that the arbitrators could award punitive damages. As evidenced by the allegations in his own pleadings, to wit; that the arbitration provision provided for arbitration of "any and all controversies or claims arising out of or related to the agreement," O'Quinn's position that he did not have notice that Kline might assert tort causes of action and a claim for punitive damages is untenable.

Lastly, O'Quinn asks us to adopt a public policy prohibiting punitive damages awards in arbitration. *See Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). As an intermediate appellate court, it is not for us to forge the public policy of this State. Moreover, no Texas court has set aside a punitive damages award by arbitrators as being contrary to the public policy of this State and we refuse to do so. *See USX,* 781 S.W.2d at 455–56; *see also Grissom v. Greener & Sumner Constr. Co.,* 676 S.W.2d 709 (Tex.App.—El Paso 1984, writ ref'd n.r.e.) (citing Tex.Civ.Stat.Ann. art. 237 § A(5) and holding that the trial court could not strike award of punitive damages as against public policy where the parties expressly agreed to submit both contract and tort claims to arbitration).

Kline's first point of error is sustained.

In her second point of error, Kline contends "the trial court erred in not adjudicating the merits of [her] claim for post-arbitration attorney's fees against O'Quinn and Pearson."

Kline asserts that the trial court "summarily" denied her request for attorney's fees without an adjudication on the merits. She then proceeds to state the standard of review for summary judgments. This case does not involve an appeal from a summary judgment, but an appeal from a proceeding to confirm an arbitration award. Moreover, pleadings and documents from that proceeding which are contained in the record reflect that Kline's request for attorney's fees was considered a number of times by the court and not "summarily" rejected.

■■ As previously noted, the arbitration provision in the second attorneys' agreement specifically provided that "each party shall be responsible for the fees of its own counsel." Consistent with that provision, the arbitration award ordered that "each party shall bear its own attorney's fees." O'Quinn contends that Kline waived the right to attorney's fees because she did not complain about this aspect of the award within the ninety-day statutory period for modification. Tex.Civ.Stat.Ann. art. 238. We agree. The arbitration award was rendered on June 22, 1992, but Kline did not file her first amended original petition seeking attorney's fees in connection with confirmation of the award until September 24, 1992, ninety-four days after the award was rendered.[2] Kline has waived any complaint regarding the arbitrators' award of attorney's fees.

■■ Kline contends that a motion to modify was not required because the arbitration award refers only to recovery of attorney's fees incurred during the arbitration, not to "post-arbitration" attorney's fees. Kline asserts that her right to attorney's fees in connection with her efforts to confirm the award was never submitted to arbitration. She maintains that the court should have adjudicated the issue of "post-arbitration" attorney's fees or referred the matter to arbitration as "a dispute among the parties" which arose following arbitration.

We disagree with Kline's contention that the arbitration award does not apply to proceedings to confirm the award. Confirmation of an arbitration award is part and parcel of the arbitration process. *See* Tex.Civ. Stat.Ann. arts. 235, 236 (Vernon 1973). Kline invoked the jurisdiction of the trial court by filing her original petition asking the court to order arbitration. As a result, Kline was required as part of the arbitration enforcement process to return to the trial

---

**2.** The arbitrators rendered a "second award," denying O'Quinn's initial motion to vacate or modify. That award was rendered on September 3, 1992. The question of whether this second award altered the time limits for bringing a motion to modify has not been raised on appeal and therefore, is not before us.

court to confirm the award and make it into an enforceable final judgment. In view of the parties agreement to pay their own attorney's fees for arbitration, and in view of the fact that the arbitrators' award is consistent with that agreement, we find that the trial court properly refused to award attorney's fees to Kline.

We also note that Kline could not recover attorney's fees under the Civil Practices and Remedies Code which sets forth the types of claims upon which attorneys fees are recoverable. Among those claims are claims for personal services rendered and claims on oral and written contracts. Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1988). Whether the claims asserted by Kline are for personal services or based on contract, those claims have been merged into the arbitration award and her action to enforce that award gives rise to a new and different cause of action for which there is no statutory basis for recovery of attorneys' fees. *See Babcock*, 863 S.W.2d at 236 (holding that proceeding to confirm an arbitration award is in the nature of an enforcement proceeding, not a contract claim); *see also Kermacy v. First Unitarian Church of Austin*, 361 S.W.2d 734, 736 (Tex. App.—Austin 1962, writ ref'd n.r.e.) (holding that on claim for architectural services rendered, architect could not recover attorneys' fees in action to vacate arbitration award in his favor).

We hold that the trial court did not err in refusing to award attorney's fees in connection with Kline's post-arbitration efforts to confirm the award.

Kline's second point of error is overruled.

In her third point of error, Kline contends "the trial court erred in directing a verdict in favor of Bank One."

An instructed verdict is proper: (1) when a defect in the opponent's pleadings makes them insufficient to support a judgment; (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) when the evidence offered on a cause of action is insufficient to raise an issue of fact. *Anderson v. Vinson Exploration, Inc.*, 832

S.W.2d 657, 661 (Tex.App.—El Paso 1992, writ denied).

In reviewing the trial court's granting of a directed verdict, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 304 (Tex.1988); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978). We must consider the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. *Qantel*, 761 S.W.2d at 304; *White*, 651 S.W.2d at 262, *Collora*, 574 S.W.2d at 68. If there is any conflicting evidence of a probative nature on a material issue, the directed verdict is improper and the judgment must be reversed and the case remanded for the jury's determination of that issue. *Qantel*, 761 S.W.2d at 304; *White*, 651 S.W.2d at 262.

In her third amended original petition, Kline alleged causes of action against Bank One for breach of contract, breach of good faith and fair dealing, and for "knowingly and actively participating in breaches of fiduciary duty" by O'Quinn and Pearson. The trial court granted a directed verdict on Kline's breach of contract claim on the ground that Bank One had no duty under the bank agreement to account for funds to Kline. It also granted a directed verdict on Kline's breach of good faith and fair dealing claim because no "special relationship" giving rise to such a claim existed between Kline and Bank One. Finally, the trial court granted a directed verdict on Kline's breach of fiduciary duty claim because Bank One's conduct did not enable O'Quinn or Pearson to breach any fiduciary duty.

While her argument focuses primarily on the breach of fiduciary duty, Kline argues generally that the trial court erred in concluding that Bank One owed "no duty." Kline's argument fails. Bank One owed no duty to Kline under the bank agreement because that agreement merely allocated a portion of the Pearson's share of fees in certain cases to Bank One. It designated the cases covered by the agreement and specified

Pearson's share of the fees in those cases. The bank agreement did not impose any affirmative obligation or duty on Bank One to account for Kline's share of fees or to assert a claim on her behalf.

As for Kline's allegations of breach of a duty of good faith and fair dealing, Bank One did not owe such a duty as a matter of law. The courts of this State do not generally recognize the existence of a "special relationship" giving rise to an independent duty of good faith and fair dealing in contract outside of the insurance context or the public sector. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595, n. 5 (Tex.1992); *see also Houston Cable TV, Inc. v. Inwood West Civic Ass'n*, 839 S.W.2d 497, 503 (Tex.App.—Houston [14th Dist.] 1992), *writ dism'd per curiam*, 860 S.W.2d 72 (Tex.1993) (on motion for rehearing).[3] In any event, we find no evidence of a special relationship between Kline and Bank One sufficient to give rise to an independent duty of good faith and fair dealing.

As for Kline's breach of fiduciary duty claim, "it is settled law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Tinney v. Team Bank*, 819 S.W.2d 560, 564 (Tex.App.—Fort Worth 1991, writ denied); *Horton v. Robinson*, 776 S.W.2d 260, 266 (Tex.App.—El Paso 1989, no writ); *Chien v. Chen*, 759 S.W.2d 484, 487 n. 2 (Tex.App.—Austin 1988, no writ). Thus, Bank One cannot be liable to Kline unless O'Quinn and Pearson owed her a fiduciary duty.

A fiduciary duty arises from the relationship of the parties and not just from the contract. *See Crim Truck*, 823 S.W.2d at 594–97. A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation. *Ameri-*

*can Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex.App.—Houston [14th Dist.] 1991, no writ) (opinion on motion for rehearing). It exists where a special confidence is placed in another who is bound to act in good faith and with due regard to the interests of the one placing confidence. *Id.* A fiduciary relationship may include informal relationships such as moral, social, domestic or purely personal relationships that are created by one party placing implicit trust and reliance on another. *Id.* However, a fiduciary relationship is extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not alone, indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required. *Id.* As the Supreme Court recently explained:

> The fact that one businessman trusts another, and relies upon his promise to perform a contract does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

*Crim Truck*, 823 S.W.2d at 594–95.

Thus, not every business relationship gives rise to a fiduciary duty. *See Crim Truck*, 823 S.W.2d at 594–97. The question of whether a confidential relationship exists giving rise to an informal fiduciary relationship is ordinarily one of fact, unless the issue is one of "no evidence;" then it is a question of law. *Id.* at 594. Because a directed verdict presents a question of "no evidence," we are dealing with a question of law.

At least one other court has recognized the existence of a fiduciary relationship between a named partner in a law firm and his associates. *Bray v. Squires*, 702 S.W.2d 266, 270 (Tex.App.—Houston [1st Dist.] 1985, no writ)

---

3. Where the Supreme Court, upon the parties' joint motion, grants an application for writ of error, sets aside judgments of the Court of Appeals and the trial court without reference to the merits, and remands to trial court for entry of judgment in accordance with the settlement agreement of the parties, the Court of Appeals' opinion is not vacated and its precedential value is equivalent to a "writ dismissed" case. 860 S.W.2d at 73 n. 3.

(citing *Kinzbach* and holding that a lawyer's duty to make full disclosure to other members of firm about matters affecting firm business was incident to the parties' employer-employee relationship). Here, the second attorneys' agreement provided that the parties were to treat each other "fairly and in good faith" and that "Kline would be an "associate" of O'Quinn's law firm "for purposes of the agreement." The agreement also provided that "monies recovered or received by way of settlement" were to be deposited in O'Quinn's client trust account "for accounting and distribution."

■■■ We are unwilling to impose a fiduciary duty upon O'Quinn and Pearson simply because of their business ties to Kline. The parties freely negotiated the terms of their agreement. Neither the allegations in Kline's third amended petition nor the evidence presented at trial give rise to a fiduciary duty outside of the second attorneys' agreement. The only evidence of a confidential relationship is Kline's testimony that she trusted O'Quinn to handle the settlement proceeds in accordance with the agreement and her testimony that she and Pearson had been acquainted over a period of time, that they had shared an office for several months, and that they had participated in a long trial together. We hold that such evidence amounts to no more than a mere scintilla and is no evidence. *See Crim Truck,* 823 S.W.2d at 594–95; *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

We hold that the trial court correctly ruled that O'Quinn and Pearson did not owe a fiduciary duty to Kline and properly directed a verdict in favor of Bank One on this cause of action.

Kline's third point of error is overruled.

We reverse that part of the trial court's judgment striking the arbitrators' award of $50,000.00 in punitive damages and render judgment that Kline recover from O'Quinn $50,000.00 in punitive damages. The remainder of the trial court's judgment is affirmed.

ELLIS, Justice, dissenting.

I agree with the court's opinion regarding attorney's fees and the directed verdict rendered in favor of Bank One. However, I respectfully dissent from that part of the court's opinion upholding the arbitrators' award of punitive damages.

Kline submitted a Demand For Arbitration and a copy of her Original Petition to the AAA. The Demand for Arbitration, which was submitted to the AAA first, defines the "nature of the dispute" as a "disagreement among attorneys over contingent fee recoveries." As to the "claim or relief sought," Kline's demand states only that an amount "is unable to be determined without discovery from respondents." The demand does not mention tort claims or punitive damages. The subsequent cover letter to the AAA accompanying her Original Petition declares that this pleading "states Ms. Kline's position on the matters in controversy **more clearly** than the papers previously submitted." As evidenced by Kline's correspondence to the AAA, Kline's Original Petition was intended to define the claims before the arbitrators as stated in her Demand for Arbitration and the parties' agreement.

O'Quinn contends that he relied on Kline's Original Petition in preparing his defense in the arbitration and that Kline's petition does not support a recovery of punitive damages as a matter of law. O'Quinn's contention is correct. The majority cites *USX* in holding that we are unable to review the sufficiency of pleadings before the arbitrators. However, in *USX,* the court reviewed the broad arbitration provision in the parties' contract, the commercial rules of arbitration, and documents filed in the arbitration before determining that the issue of punitive damages was before the arbitrators. *USX Corp. v. West,* 781 S.W.2d 453, 455 (Tex.App.—Houston [1st Dist.] 1989) (original proceeding).

In contrast to the arbitration provision in *USX,* I would not read the arbitration provision in this case as broadly as the majority does. The arbitration provision at issue here provides that the parties would arbitrate "a dispute," not "any controversy." *See USX,* 781 S.W.2d at 454. Kline specifically informed the AAA that "a dispute" meant a "disagreement among attorneys over contingent fee recoveries." In other words, a dispute about the subject matter of the parties'

contract. Section 43 of the Commercial Arbitration Rules of the AAA provides that "the arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and **within the scope of the agreement of the parties**...." COLUMBIA UNIVERSITY, GUIDE TO INTERNATIONAL ARBITRATION AND ARBITRATORS, 137, 148 (2d ed. 1992). [emphasis added] In this case, Kline's claim for punitive damages is beyond the scope of the agreement of the parties.

Where an arbitration clause is narrowly drawn, judicial review of the arbitrator's jurisdiction as opposed to the merits of the arbitration award, is less deferential. *The Babcock & Wilcox Co. v. PMAC*, 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ pending) (citing *Container Prods., Inc. v. United Steelworkers of Am. and Its Local 5651*, 873 F.2d 818, 819–20 (5th Cir. 1989)). In the instant case, we are confronted not only with a narrow arbitration provision, but also with a pleading which was intended to broaden the scope of that provision. Therefore, I would not defer to the arbitrators with regard to the sufficiency of that pleading.[1]

In her Original Petition, Kline alleged causes of action against O'Quinn and Pearson for breach of contract, breach of a duty of good faith and fair dealing, and breach of a fiduciary duty. She alleged that O'Quinn and Pearson failed to pay her share of fees in the cases covered by the Second Attorneys' Agreement. Specifically, she alleged that O'Quinn and Pearson failed to disclose the receipt "in trust" of settlement proceeds in cases covered by their agreement and then disbursed those proceeds without her knowledge or consent. There was no allegation of constructive trust or fraud. There was also no allegation of conscious indifference on the part of O'Quinn or Pearson and no allegation that their conduct was likely to cause serious harm to Kline. *See Transportation Ins. Co.*

*v. Moriel*, 37 Sup.Ct.J. 883, 891–92 (June 8, 1994) (opinion on motion for rehearing).

"A dispute arising under or out of a contractual relationship may give rise to both breach of contract and tort claims at the same time since the breach of duty under the contract may involve tortious conduct." *Valero Energy Corp. v. Wagner & Brown II*, 777 S.W.2d 564, 566 (Tex.App.—El Paso 1989, writ denied). However, to recover punitive damages attendant to a contract dispute, a plaintiff must plead and prove a distinct tortious injury with accompanying actual damages. *See e.g. Moriel*, 37 Sup. Ct.J. at 893; *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991); *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex.1987); *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (and cases cited therein); *Jim Walter Homes v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *Bellefonte Underwriters Co. v. Brown*, 704 S.W.2d 742, 744 (Tex.1986). Punitive damages are not recoverable for breach of contract alone. *Karnes*, 717 S.W.2d at 903. In determining whether an action is in tort or in contract, we must look to the substance of the cause of action, not the manner in which it was pleaded. *Jim Walter Homes*, 711 S.W.2d at 618.

> As stated by the Texas Supreme Court: The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Southwestern Bell Tel. Co.*, 809 S.W.2d at 495 (citing *Jim Walter Homes*, 711 S.W.2d at 618).

Kline's only claim of tort liability is for breach of a duty of good faith and fair dealing and for breach of a fiduciary duty. As for her claim of breach of a duty of good faith and fair dealing, Kline alleged a breach

---

1. Notwithstanding Kline's correspondence and pleadings submitted to the AAA, the majority points out that verbiage in O'Quinn's plea in abatement which requested arbitration of "all controversies or claims arising out of or relating to the [Second Attorneys'] Agreement" indicates that the arbitrators were to consider all matters, including punitive damages. As noted by the majority, the trial court never ruled on O'Quinn's plea in abatement nor was that motion submitted to the arbitrators. More importantly, that defensive pleading in no way enlarged or enhanced the allegations in Kline's Original Petition, which *was* submitted to the arbitrators.

based solely on the fact that the parties' agreement provided that the parties were to treat each other "fairly and in good faith." "If an action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is in substance an action on the contract, whatever may be the form of the pleading." *International Printing Pressman and Assistants' Union Am. v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1946). Here, the substance of Kline's claim is based solely on the alleged breach of the Second Attorneys' Agreement. Because her cause of action for breach of a duty of good faith and fair dealing is not maintainable without reference to the parties' contract, Kline failed to state a proper tort cause of action.

As the majority correctly observed, a cause of action for breach of the duty of good faith and fair dealing is generally not recognized in contract outside of the insurance context or the public sector. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992); *Houston Cable TV, Inc. v. Inwood West Civic Assoc.,* 839 S.W.2d 497, 503 (Tex.App.—Houston [14th Dist.] 1992), writ dism'd, 860 S.W.2d 72 (Tex.1993). Aside from those circumstances, an allegation of breach of a duty of good faith and fair dealing gives rise only to a cause of action for breach of contract. *See Crim Truck,* 823 S.W.2d at 595, n. 5. As previously noted, Kline's claim of a breach of good faith and fair dealing is nothing more than a claim for breach of contract. As a result, Kline could not recover punitive damages as a matter of law on that basis.

The same is true of her claim of a breach of fiduciary duty. Similar to her other tort claim, Kline alleges a fiduciary duty on the part of O'Quinn and Pearson simply because the parties agreement provided: (1) that Kline's share of fees would be paid from settlement proceeds deposited in O'Quinn's client trust account; and, (2) that Kline would be an "associate" of O'Quinn's law firm for purpose of handling cases covered by the agreement.

A fiduciary duty arises from the relationship of the parties and not just from the contract. *See Crim Truck,* 823 S.W.2d at 594–97. In the instant case, Kline does not allege the existence of a confidential relationship which would give rise to a fiduciary duty outside of the parties' contract. *See Crim Truck,* 823 S.W.2d at 594–97; *see also American Medical Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 339 (Tex.App.—Houston [14th Dist.] 1991, no writ) (opinion on motion for rehearing). Thus, Kline failed as a matter of law to state a cause of action for breach of fiduciary duty and was barred from recovering punitive damages on that ground.

Similarly, Kline's only claim of injury was economic and to the subject matter of the contract, i.e., her share of contingent attorneys' fees owed under the Second Attorneys' Agreement. Economic injury to the subject matter of the contract will not automatically preclude a punitive damages award especially where there is an allegation of fraud. *See Houston Cable,* 839 S.W.2d at 503; *see also Schindler v. Austwell Farmers Co-Op,* 829 S.W.2d 283, 289–91 (Tex.App.—Corpus Christi 1992) (opinion on motion for rehearing), *aff'd as modf'd,* 841 S.W.2d 853 (Tex. 1992).

As previously noted, Kline's Original Petition did not allege fraud or intentional conduct of any kind (i.e., malice or conscious indifference) nor did it specify punitive damages. Her petition requested actual damages, interest, attorney's fees, declaratory relief, and "such other and further relief, whether at law or in equity, whether general or special, to which she may show herself to be entitled."

It is well-settled that a pleading is sufficient only if it gives an opposing party fair and adequate notice of the claims at issue. *See Garvey v. Vawter,* 795 S.W.2d 741, 742 (Tex.1990) (per curiam). A general prayer for relief cannot enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist. *Stoner v. Thompson,* 578 S.W.2d 679, 684 (Tex.1979). Only the relief consistent with the theory of the claim reflected in the petition may be granted under a general prayer. *Kissman v. Bendix Home Sys.,* 587 S.W.2d 675, 677 (Tex.1979). The only viable theory of recovery alleged in Kline's Original Petition was for breach of contract. The

general prayer contained therein cannot be read to provide relief not pled. Thus, Kline's Original Petition not only failed to state a claim upon which punitive damages could have been awarded, but also did not give O'Quinn fair and adequate notice that punitive damages could have been awarded by the arbitrators.[2]

I recognize that every reasonable presumption is indulged to uphold arbitration proceedings. *Riha v. Smulcer*, 843 S.W.2d 289, 292 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Massey v. Galvan*, 822 S.W.2d 309, 316 (Tex.App.—Houston [14th Dist.] 1992, writ denied). However, in view of the fact that Kline's Original Petition was intended to define the scope of the arbitration under the parties' agreement and the fact that this pleading did not allege facts which would support an award of punitive damages, I would hold that the trial court correctly determined that the arbitrators rendered an award on a matter not submitted to them and that the trial court properly struck the punitive damages award against O'Quinn.

I would also note that such a holding is compelled by the fact that this court is without a complete record. The record before this court does not include a transcription of the arbitration proceeding. The majority, citing *House Grain Co. v. Obst*, 659 S.W.2d 903, 906 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), holds that without a transcription of the arbitration proceeding, the court must presume adequate evidence to support the award. The case relied upon in *House Grain* for the aforementioned proposition, *City of San Antonio v. McKenzie Constr.*, 136 Tex. 315, 150 S.W.2d 989, 996 (1941), says nothing of the kind, but merely recites the general rule requiring that all reasonable presumptions be indulged in favor of the award.

In the absence of a complete record, we must presume that evidence before the trial court supported its judgment. *Beck & Masten Pontiac–GMC v. Harris County Appraisal Dist.*, 830 S.W.2d 291, 295 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (*citing* TEX.R.APP.P. 50(d)). While Section 23 of the Commercial Arbitration Rules of the AAA does not place the burden on any party to request a "stenographic record" of the arbitration proceedings, the rules of appellate procedure clearly place the burden on the appellant "to see that a sufficient record is presented to show error requiring reversal." TEX.R.APP.P. 52(d); COLUMBIA UNIVERSITY, *supra* at 143. Because Kline did not bring forth a complete record on appeal, this court must presume the evidence before the trial court supported its judgment. *See Beck & Masten*, 830 S.W.2d at 295.

Accordingly, I would overrule Kline's first point of error and affirm the judgment of the trial court.

### OPINION ON MOTIONS FOR REHEARING

In her motion for rehearing, Kline requests interest on the $50,000.00 punitive damages award in accordance with the arbitrators' ruling. We find Kline's request to be meritorious. It is hereby ordered that the trial court's judgment be modified to award Kline interest on the $50,000.00 in punitive damages at the rate of ten percent (10%) per annum commencing from June 15, 1992, until paid. Kline's motion for rehearing is in all other respects overruled.

In his motion for rehearing, O'Quinn contends that he did not waive constitutional arguments in support of vacating or modifying the arbitrator's punitive damages award. Although O'Quinn does not dispute that he failed to raise constitutional grounds in the trial court, he contends that, as the appellee, he is under no obligation to argue every alternative theory in support of the trial court's judgment. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990).

While O'Quinn is before this court in the procedural posture of appellee, O'Quinn was the non-prevailing party in arbitration. As the losing party seeking to modify or vacate the arbitrators' award, O'Quinn had the burden in the trial court of bringing forth a complete record and of establishing any basis, including constitutional grounds, which would warrant vacating or modifying the arbitrators' award. *See Grissom v.*

---

**2.** Similar to her petition, Kline's post-evidentiary brief filed in the arbitration requested punitive damages based solely on the breach of the parties' agreement.

*Greener & Sumner Constr. Co.,* 676 S.W.2d 709, 710–11 (Tex.App.—El Paso 1984, writ ref'd n.r.e.) (appellee, as the losing party in arbitration, had the burden in the trial court of establishing facts which would warrant vacating of arbitration award); *see also Atrium Westwood VIII Venture v. Barrick Westwood Limited Partnership,* 693 S.W.2d 699, 700–701 (Tex.App.—Houston [14th Dist.] 1985, no writ) (same, except appellant was the losing party in arbitration). O'Quinn did not present his constitutional arguments to the trial court and, therefore, waived those grounds for this appeal. *See Grissom,* 676 S.W.2d at 710–11; *see also Atrium Westwood,* 693 S.W.2d at 700–701; *Mullinax, Wells, Baab and Cloutman v. Sage,* 692 S.W.2d 533, 536 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (opinion on motion for rehearing) (law firm waived attorney's fees by not raising claim in the trial court during proceeding to set aside arbitration award). O'Quinn's motion for rehearing is overruled.

In accordance with our original opinion, we hereby reverse that part of the trial court's judgment, striking the arbitrators' award of $50,000.00 in punitive damages, and render judgment that Kline recover from O'Quinn $50,000.00 in punitive damages, plus interest at the rate of ten percent (10%) per annum commencing from June 15, 1992, until paid. The remainder of the trial court's judgment is affirmed.