Elizabeth Healy McALISTER,
Appellant,

v.

Kyle Stephen McALISTER, Appellee.

No. 04–00–00604–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 16, 2002.

Rehearing Overruled March 21, 2002.

James D. Stewart, James D. Stewart & Associates, Inc., Robinson C. Ramsey, Soules & Wallace, P.C., San Antonio, for appellant.

Kenneth D. Brazle, Brazle & Pfeuffer, L.L.P., Frank B. Suhr, New Branunfels, for appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, and KAREN ANGELINI, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

Elizabeth Healy McAlister ("Liz") appeals the trial court's order denying her plea in abatement based on dominant jurisdiction and the subsequent divorce decree entered by the trial court. Kyle Stephen McAlister ("Kyle") has filed a motion to dismiss the appeal as moot based on the acceptance of benefits doctrine. Kyle's motion to dismiss the appeal is denied. Because we conclude that the trial court abused its discretion in denying Liz's plea in abatement, we reverse the trial court's judgment and dismiss the underlying lawsuit. We do not address the remaining issues with regard to the divorce decree because they are not necessary to the final disposition of this appeal. *See* TEX.R.APP. P. 47.1.

## MOTION TO DISMISS

Prior to submission, Kyle filed a motion to dismiss, seeking a dismissal under the acceptance of benefits doctrine which holds that a litigant cannot treat a judgment as both right and wrong. Under this doctrine, if Liz voluntarily accepted the benefits of the divorce decree, she would be estopped from prosecuting an appeal from that decree. *See Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); *Bloom v. Bloom,* 935 S.W.2d 942, 948 (Tex.App.-San Antonio 1996, no writ). Liz responds that the doctrine does not apply in this case because the trial court entered post-judgment temporary orders stating, "The funds received by ELIZABETH MCALISTER from KYLE MCALISTER under the terms of the Final Divorce Decree shall continue to be received as temporary child and spousal support during the pendency of appeal." Such orders are authorized by section 6.709 of the Texas Family Code, which states in pertinent part:

> Not later than the 30th day after the date an appeal is perfected, on the motion of a party or on the court's own motion, after notice and hearing, the trial court may render a temporary order necessary for the preservation of the property and for the protection of the parties during the appeal, including an order to: (1) require the support of either spouse . . .

TEX. FAM.CODE ANN. § 6.709(a) (Vernon 1998). Although Kyle argues that this provision does not afford the court authority to make such orders retroactive to the date of the decree, we find no such limitation in the Code. Such an interpretation could hamstring both the court and the appellant during the time of post-decree hearings and the appeal thereby abrogating the legislature's intent to maintain the status quo and provide for spousal and child support, as necessary, during the appeal. We find that the trial court has the authority under § 6.709 to issue post-judgment temporary orders retroactive to the

decree. We further find that where such orders are in place, the acceptance of the benefits doctrine does not apply.

■ In addition to the post-judgment temporary orders, Liz further argues that the doctrine of acceptance of benefits is inapplicable because she received the payments out of economic necessity. "Acceptance of benefits due to financial duress or other economic circumstances does not constitute voluntary acceptance." *See Cooper v. Bushong*, 10 S.W.3d 20, 23 (Tex. App.-Austin 1999, pet. denied). The trial court indicated on the record that he was entering temporary orders based on Liz's economic need to receive such support. Kyle had the burden to prove that Liz intentionally and voluntarily accepted the benefits of the decree. *See L.P.D. v. R.C.*, 959 S.W.2d 728, 731 (Tex.App.-Austin 1998, pet. denied). Liz's counsel sent Kyle's counsel a letter stating that she was accepting payments under the decree in protest because she needed the money to support herself and their children. Liz also established that purchases of a home and car were possible only because her family members loaned her money for such down payments, and that her loans were obtained while she held the status of a married person. Thus, Kyle has not established as a matter of law that Liz voluntarily received the benefits of the decree.

Kyle's motion to dismiss is denied.

### DOMINANT JURISDICTION

■ The general rule is that the first court in which a suit is filed has dominant jurisdiction over other courts of equal stature. *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex.1974); *Lamar Sav. Ass'n v. White*, 731 S.W.2d 715, 716 (Tex.App.-Houston [1st Dist.] 1987, orig. proceeding). The first court will not, however, have dominant jurisdiction if it is established that: (1) a party is estopped from asserting the first court's jurisdiction; (2) necessary parties cannot be joined in the first suit, or the court lacks power to bring the parties before it; or (3) the plaintiff in the first court lacks the intent to prosecute the first lawsuit. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex.1988).

In this case, the record conclusively establishes that Liz filed suit first in Bexar County.[1] Kyle contends, however, that Bexar County did not acquire dominant jurisdiction because: (1) Liz did not maintain a residence in Bexar County; and (2) Liz is estopped from asserting jurisdiction in Bexar County based on her failure to formally serve Kyle with the petition filed in that lawsuit.

### A. Bexar County Residence

■ We review a trial court's factual determination of residency under an abuse of discretion standard. *See Roa v. Roa*, 970 S.W.2d 163, 165 (Tex.App.-Fort Worth 1998, no pet.); *Schreiner v. Schreiner*, 502 S.W.2d 840, 843 (Tex.Civ.App.-San Antonio 1973, writ dism'd w.o.j.). An abuse of discretion with respect to factual matters occurs if the record establishes the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *Christian v. Christian*, 985 S.W.2d 513, 514 (Tex.App.-San Antonio 1998, no pet.). However, a trial court has no "discretion" in determining what the law is or applying the law to the facts. *Walker*, 827 S.W.2d at 840; *Christian*, 985 S.W.2d at 514. Thus, a

---

1. The fact that the Bexar County lawsuit was first filed is conclusively established as a matter of law from the testimony of Liz and her attorney, Jo Chris Lopez, at the hearing on the plea in abatement and Ms. Lopez's letter to Kyle referencing the pending divorce proceeding dated July 24, 1998, which was introduced as an exhibit at the hearing.

clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker,* 827 S.W.2d at 840; *Christian,* 985 S.W.2d at 514.

Kyle argued to the trial court that because Liz was living in Guadalupe County, she could not establish a residence in Bexar County. If this argument was the basis for the trial court's denial of the plea in abatement, the trial court would have abused its discretion in failing to analyze the law correctly.

■■■ For venue purposes, it has long been settled that a person may have dual residences. *Snyder v. Pitts,* 150 Tex. 407, 241 S.W.2d 136, 139 (Tex.1951). Further, from the fact that there can be but one domicile and several residences, the supreme court has concluded "that the element of 'intent to make it a permanent home' is not necessary to the establishment of a second residence away from the domicile." *Id.; Burke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 346 S.W.2d 663 (Tex.Civ.App.-San Antonio 1961, no writ). The Texas Family Code requires a party to be a "resident of the county" for the 90 day period preceding the filing of a divorce suit there. TEX. FAM.CODE ANN. § 6.301(2) (Vernon 1998). The Code does not, however, impose any limits on the number of residences a party may maintain at any one time. Therefore, if the trial court denied the plea in abatement based on Kyle's contention that Liz could only have one residence, the trial court abused its discretion.

Assuming, however, that the trial court based its decision on a factual finding that Liz did not establish a residence in Bexar County, the trial court would only have abused its discretion if the record establishes that the trial court could reasonably have reached only one decision—that Liz had a residence in Bexar County. At the hearing on the plea in abatement, Liz introduced into evidence the leases for the apartment maintained in Bexar County. Liz also introduced into evidence copies of phone bills and utility bills paid in connection with the apartment. Liz testified that their three sons attended school in San Antonio, and during the school year, a majority of Liz's time was spent at the apartment due to the boys' school activities. The school records relying on the Bexar County residence to enable the boys to attend school in San Antonio also were in evidence.

■■■ Kyle testified that Liz spent nine out of ten nights at the ranch in Guadalupe County. Although this controverts the amount of time Liz testified that she spent at the Bexar County apartment, it does not supplant the other evidence establishing a residency. In Kyle's supplemental letter brief, Kyle poses the question as whether Liz could establish a residence in Bexar County if she "only intermittently stayed in a Bexar County apartment while residing over 90% of her time at her ranch home in Guadalupe County?" Applying the law to the facts, the trial court could reasonably have reached only one answer to that question—yes. Based on the evidence presented, the record establishes that the only decision the trial court could reasonably have reached was a finding that Liz had dual residences—one in Guadalupe County and one in Bexar County. Accordingly, the residence requirement for filing the divorce petition in Bexar County was met, and the plea in abatement could not have been denied on this ground.

*B. Service*

■■■ A plea in abatement might properly be overruled where the party asserting it has delayed unreasonably in procuring a citation in the first filed suit, demonstrating a lack of intent to prose-

cute. *Curtis,* 511 S.W.2d at 267–68. The required standard of diligence in procuring citation and service is "that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances." *Gonzalez v. Phoenix Frozen Foods, Inc.,* 884 S.W.2d 587, 590 (Tex.App.-Corpus Christi 1994, no writ).

 Liz's attorney testified that after she filed the petition in Bexar County on July 24, 1998, she sent a copy of the petition and a waiver of citation to Kyle. The letter was introduced into evidence, and Kyle admitting receiving the letter and the divorce petition. In response to the letter, Liz testified that Kyle told her they would work out an agreement. Liz's attorney also testified that after receiving the letter, Kyle phoned her office and indicated that he did not wish to retain an attorney but wanted to attempt an amicable resolution. Based on these representations of settlement which according to the testimony would have been made around the beginning of August, 1998, Liz's attorney stated she did not serve Kyle. After Liz's attorney received a letter detailing the agreement that Liz and Kyle had reached, Liz's attorney became concerned that Kyle might be under the impression that she was representing both parties. As a result, Liz's attorney sent Kyle a second letter on September 23, 1998, informing him that she would prepare a divorce decree based on the proposed agreement but that she would only be representing Liz in connection with the proceeding. Liz's attorney reiterated the desire to resolve the matter amicably but stated Kyle should contact an attorney if he had any questions. Two weeks after this letter was sent in the belief that the parties were working toward an amicable settlement, Kyle retained counsel who filed a divorce petition in Guadalupe County. Less than a month later, Liz filed the plea in abatement.

 The issue presented is whether Liz and her attorney used the diligence with regard to citation that an ordinarily prudent person would have used under the same or similar circumstances. Liz's attorney testified, "In Bexar County it is not unusual to follow this procedure where parties want to be resolved and they think they can work out all of the terms of the agreement." The public policy of both our state and federal governments favors agreements to resolve legal disputes through such voluntary settlement procedures. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992). To hold that Liz failed to exercise diligence under the circumstances presented would be in contravention of this policy. Accordingly, we hold as a matter of law that Liz did not unreasonably delay in procuring citation such that she is estopped from asserting that Bexar County had dominant jurisdiction.

### C. Nonsuit

 In a cross-point, Kyle contends that Liz's complaint regarding dominant jurisdiction is moot because Liz non-suited the Bexar County suit after the trial court denied the plea in abatement. We disagree. As an appellate court, our role is to review whether the trial court erred in denying the plea in abatement when the ruling was made. At the time the trial court made its ruling, Bexar County was vested with dominant jurisdiction. Therefore, the proper ruling was for the trial court to grant the plea in abatement and dismiss the lawsuit in Guadalupe County. *See Curtis,* 511 S.W.2d at 267; *In re McCall,* 967 S.W.2d 934, 936 (Tex.App.-Corpus Christi 1998, orig. proceeding); *Knops v. Knops,* 763 S.W.2d 864, 866 (Tex. App.-San Antonio 1988, no writ).

CONCLUSION

The trial court's judgment is reversed, and the underlying lawsuit is dismissed.