Dismissed and Opinion filed October 5, 2004









Dismissed and Opinion filed October 5, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-01211-CV

____________

 

DANIEL WAITE, SR., Appellant

 

V.

 

MARGARET SUSAN
WAITE,
Appellee

 



 

On Appeal from the 311th
District Court

Harris County, Texas

Trial Court Cause No. 99-48049

 



 

O P I N I O N








Daniel Waite, Sr. appeals from an unequal
property division awarded him in a divorce judgment.  In response, his ex-wife, Margaret Susan
Waite,[1]
has filed a motion to dismiss his appeal because he accepted substantial
benefits awarded to him in the divorce decree. 
Because Mrs. Waite’s motion has merit, we dismiss Mr. Waite’s appeal,
addressing only his thirteenth issue, which claims that the trial court lacked
subject matter jurisdiction over the Waites’ Christian marriage.  In granting Mrs. Waite’s motion, we conclude
that the motion was timely filed, that Mr. Waite did not prove that he accepted
the benefits only because of economic necessity, and that a reversal and remand
could affect Mr. Waite’s rights in the property he was awarded.  

I.        Background

Daniel and Margaret married in 1968, and
had four children.  Near the end of the
marriage, the Waites sued Mr. Waite’s former employer, Dean Witter Reynolds,
Inc., for defamation.  The case
eventually settled in 1991 for $15 million. 
Several years later, Mrs. Waite sued Mr. Waite for divorce.  

During the bitter and protracted divorce
proceeding, the parties spent the great bulk of their time litigating the
nature of the money remaining from the Dean Witter settlement.  Mr. Waite argued it was his separate
property; Mrs. Waite argued it was community property.  By summary judgment, the trial court ruled
that the settlement proceeds were community assets subject to a just and right
division.[2]  Ultimately the proceeds—then approximately $3
million—were placed in the registry of the court.  

The parties tried the remaining issues of
property division, divorce and assault to the court.  It granted Mrs. Waite a divorce on the
grounds of cruel treatment.  It found
that Mr. Waite assaulted Mrs. Waite, and ordered him to pay her $20,000.  The court also ordered a just and right
division of the community estate; it awarded Mr. Waite $862,997.27 of the funds
in the court’s registry, and awarded Mrs. Waite the balance.  In addition, Mr. Waite was awarded the family
residence as well as a tax refund check due on a joint return the Waites
filed.  








Over the course of the next few months,
Mr. Waite took possession of every significant asset the court awarded
him.  Immediately upon entry of the
judgment, Mr. Waite requested that the court release the funds to the parties
in accordance with its judgment.  Mrs.
Waite did not object.  Mr. Waite received
$862,997.27 from the court registry, and Mrs. Waite received
$2,085,296.52.  Not long after that, Mr.
Waite asked Mrs. Waite to convey to him her interest in the home—valued during
trial at more than $300,000.  She did,
and, immediately, Mr. Waite filed the deed in the county property records.  Several months later—and again in accordance
with the provisions of the divorce decree—Mr. Waite demanded that Mrs. Waite
endorse to him the federal income tax refund check issued on the parties’ joint
return in the amount of $5,705.  At no
time did Mr. Waite qualify his acceptance of the cash, the home, or the tax
refund, or otherwise make his acceptance of these benefits awarded in the
divorce decree subject to his right to appeal. 
By the time he received the tax funds, Mr. Waite had cashed or taken
control of every significant asset awarded him.

Mr. Waite raises fifteen issues in this
appeal;[3]
however, as we stated earlier, we will address only his thirteenth issue
because the remainder of his issues are rendered moot by Mrs. Waite’s motion to
dismiss.

II.       Mr. Waite’s Challenge to the Trial Court’s
Subject Matter Jurisdiction

In the thirteenth issue in his appeal, Mr.
Waite claims that the trial court, an institution of the State, had no subject
matter jurisdiction to dissolve his marriage, which he claims is a purely
ecclesiastical union.  He claims that by
exercising jurisdiction over him, the trial court violated his constitutional
rights.  








Subject matter jurisdiction exists by
operation of law only, and “this jurisdictional prerequisite plainly cannot be
conferred by consent, waiver, or estoppel at any state of a proceeding.”  See Bloom v. Bloom, 935 S.W.2d 942,
948 (Tex. App.—San Antonio 1996, no pet.) (citing Fed’l Underwriters Exch. v. Pugh, 141 Tex. 539, 541, 174 S.W.2d 598,
600 (1943); Beeson v. Beeson, 578 S.W.2d 517, 518 (Tex. Civ. App.—El
Paso 1979, no writ)).  If the trial court
had no subject matter jurisdiction over the Waites’ marriage, the judgment is
void.  See Mapco, Inc. v. Forrest,
795 S.W.2d 700, 703 (Tex.1990) (per curiam) (defining a void judgment as one
rendered when a court has no jurisdiction over the parties or subject matter,
no jurisdiction to render judgment, or no capacity to act as a court).  If the judgment is void because the trial
court lacked subject matter jurisdiction, we must declare the judgment void and
dismiss the appeal because an appellate court has no jurisdiction to decide the
merits of an appeal from a void judgment or order.  See Mellon Serv. Co. v. Touche Ross &
Co., 946 S.W.2d 862, 864, 870 (Tex. App.—Houston [14th Dist.] 1997, no
writ).  This issue, then, must be the
first we address, for if the claim is valid and the judgment is void, we can go
no further.[4]


Mr. Waite does not specifically explain
how the constitutional rights he raises bar the trial court from exercising
jurisdiction over his marriage and divorce. 
Instead, he argues generally that his marriage to Mrs. Waite is purely
ecclesiastical, so that the trial court violated his Free Exercise and
Establishment Clause rights under the First Amendment when it asserted
jurisdiction over the Waites’ marriage. 
We have answered this question before, although it arrived on its first
visit in a different presentation.  See
Waite v. Waite, 64 S.W.3d 217, 220 (Tex. App.—Houston [14th Dist.] 2001,
pet. denied).  








It came to us then by an appeal of an
order denying Mr. Waite’s request for a temporary injunction.  He had requested the trial court to forbid
Mrs. Waite from relying upon certain Family Code statutes governing the
dissolution of marriage.  The trial court
denied Mr. Waite the requested relief. 
In overruling Mr. Waite’s issues, we described them in this way:

Accordingly, we
overrule appellant’s assertion that section 6.001 violates, 1) the
Establishment Clause of the U.S. Constitution because it entangles the
judiciary in religious issues; and 2) the Free Exercise Clause of the U.S.
Constitution and the “rights of conscience” guarantee under the Texas
Constitution, because it requires the judiciary to interfere in a religious
dispute.

Id. at 221–22.  Although he does not mention Family Code
section 6.001—the “no-fault” divorce statute—and although he is appealing the
denial of his plea to the jurisdiction rather than the denial of the temporary
injunction, the underlying issues arguably are the same.  Did the trial court impermissibly interfere
with religious issues?  Is marriage a
religious covenant and not a civil status regulated by law?

In our first opinion, a majority of the
court rejected the argument that section 6.001 of the Family Code impermissibly
interfered with affairs that are solely religious in nature.  Today we reaffirm the principles underlying
that decision.

Mr. Waite is mistaken that the marriage he
entered into with Mrs. Waite—the license for which was obtained through a
county clerk’s office and the record of which is in county records in Texas—is
a wholly religious union.  From the
beginning of our nation, the marital relationship was recognized as a most
important union that the state had an interest in regulating.  Maynard v. Hill, 125 U.S. 190, 205–06
(1888).   

Marriage, as
creating the most important relation in life, as having more to do with the
morals and civilization of a people than any other institution, has always been
subject to the control of the legislature. 
That body prescribes the age at which parties may contract to marry, the
procedure or form essential to constitute marriage, the duties and obligations
it creates, its effects upon the property rights of both, present and
prospective, and the acts which may constitute grounds for its dissolution.








Id. at 205. 
Our own legislature has enacted these types of regulations.  See Tex.
Fam. Code §§ 1.101–.108, 2.001–.012, 2.101–.103, 2.201–.209 &
2.501.  

For many couples, the wedding ceremony is
religious and their religious beliefs inform and mold the ceremony and their
union; for other couples, presumably those having no strong religious bond, the
wedding ceremony is completely unconnected with any religion or religious
belief.  Regardless of how the couple
views their union—whether they see it primarily as religious or secular—the
State governs all legal aspects of the union.[5]

‘When the
contracting parties have entered into the married state, they have not so much
entered into a contract as into a new relation, the rights, duties, and
obligations of which rest not upon their agreement, but upon the general law of
the state, statutory or common, which defines and prescribes those rights,
duties, and obligations.  They are of
law, not of contract.  It was a contract
that the relation should be established, but, being established, the power of
the parties as to its extent or duration is at an end.  Their rights under it are determined by the
will of the sovereign, as evidenced by law. . . . It is not then a contract
within the meaning of the clause of the constitution which prohibits the
impairing the obligation of contracts. 
It is rather a social relation like that of parent and child, the
obligations of which arise not from the consent of concurring minds, but are
the creation of the law itself, a relation the most important, as affecting the
happiness of individuals, the first step from barbarism to incipient
civilization, the purest tie of social life, and the true basis of human
progress.’

Maynard, 125 U.S. at 211–12 (quoting Adams v.
Palmer, 51 Me. 480, 483 (Me. 1863)).








Our own legislature has empowered the
family district court in this case to grant divorces and divide marital
property.  See Tex. Gov’t Code §§ 24.001, 24.619; Tex. Fam. Code §§ 6.001–.007.  Thus, the court was authorized to hear this
case and clothed with full authority to adjudicate the parties’ rights.  The court did not err in denying Mr. Waite’s
plea to the jurisdiction.  We overrule
Mr. Waite’s thirteenth point of error.

III.      Mrs. Waite’s Motion to Dismiss Based on Mr.
Waite’s Acceptance of Benefits 

A.      Mrs.
Waite’s Motion is Not Untimely

We now turn to Mrs. Waite’s motion to
dismiss.  But, before we reach its
merits, Mr. Waite argues we cannot consider it because it was not filed timely
under Texas Rule of Appellate Procedure 10.5(a).  Rule 10 governs motions in the appellate
courts.  Rule 10.5(a), entitled “Motions
Relating to Informalities in the Record,” provides as follows: 

A motion relating
to informalities in the manner of bringing a case into court must be filed
within 30 days after the record is filed in the court of appeals.  The objection, if waivable, will otherwise be
deemed waived.

Tex. R. App. P. 10.5(a).  As we discuss below, the acceptance of
benefits doctrine is a substantive rule grounded in estoppel; it has nothing to
do with informalities in an appellate record, which involve procedural defects
in the form of the record.  See Bloom,
935 S.W.2d at 946 (rejecting application of rule to acceptance of benefits
motion); Aycock v. Pannill, 853 S.W.2d 161, 163–64 (Tex. App.—Eastland
1993, writ denied) (same).  As a result,
any timetable contained in Rule 10.5 does not apply to Mrs. Waite’s motion to
dismiss.

B.      The
Acceptance of Benefits Doctrine

We now turn to the substance of Mrs.
Waite’s motion to dismiss Mr. Waite’s appeal based on the acceptance of
benefits doctrine.  Generally, under this
doctrine, a party who accepts the benefits of a judgment is estopped from
appealing that judgment.  Mr. Waite does
not dispute that he accepted benefits that were awarded to him in the divorce
decree.  Instead, he argues that the
doctrine does not apply because he falls withing the following two exceptions:

·                     
His
acceptance of the benefits was involuntary due to economic necessity; and








·                     
A reversal of the judgment will not affect his rights to
the benefits he has received. 

For the reasons explained below, we hold
that Mr. Waite does not satisfy either exception he raises.

1.       The
Applicable Law

As we noted earlier, generally, a party
who accepts the benefits of a judgment is estopped from challenging the
judgment by appeal.  See Texas State
Bank v. Amaro, 87 S.W.3d 538, 544 (Tex. 2002); Carle v. Carle, 149
Tex. 469, 234 S.W.2d 1002, 1004 (1950); Kline v. O’Quinn, 874 S.W.2d
776, 780 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  The Texas Supreme Court explained in Carle
v. Carle, also a divorce case, “A litigant cannot treat a judgment as
both right and wrong, and if he has voluntarily accepted the benefits of a
judgment, he cannot afterward prosecute an appeal therefrom.”  Carle, 234 S.W.2d at 1004.  This doctrine arises often in divorce
cases when one spouse accepts certain benefits of the judgment and then tries
to appeal the remainder of the judgment. 
See, e.g., Bloom, 935 S.W.2d at 946–48; Blaylock v. Blaylock,
603 S.W.2d 254, 255 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ); Swearingen
v. Swearingen, 487 S.W.2d 784, 788 (Tex. Civ. App.—San Antonio 1972, writ
dism’d); Nixon v. Nixon, 348 S.W.2d 438, 440–41 (Tex. Civ. App.—Houston [1st
Dist.] 1961, writ dism’d).  The burden is
on the appellee to prove that the appellant is estopped by the acceptance of
benefits doctrine.  See Gonzalez v.
Gonzalez, 614 S.W.2d 203, 204 (Tex. Civ. App.—Eastland 1981, writ dism’d).








There are, however, exceptions to the
acceptance of benefits doctrine.  For
example, one exception is based on economic necessity, and it applies when the
acceptance of benefits is not voluntary because of financial duress or other
economic circumstances.  See McAlister
v. McAlister, 75 S.W.3d 481, 483 (Tex. App.—San Antonio 2002, pet. denied);
Cooper v. Bushong, 10 S.W.3d 20, 23 (Tex. App.—Austin 1999, pet. denied);
Gonzalez, 614 S.W.2d at 204.  Another
exception applies when a reversal of the judgment could not possibly affect an
appellant’s right to the benefit accepted. 
See Amaro, 87 S.W.3d at 544; Carle, 234 S.W.2d at 1004; Blaylock,
603 S.W.2d at 255.  Stated another way,
when the appellant accepts only that part of the judgment that the appellee
concedes is due to the appellant, the appellant is not estopped from
appealing.  Carle, 234 S.W.2d at
1004; Bloom, 935 S.W.2d at 944. 
These exceptions are narrow.  See
Carle, 234 S.W.2d at 1004; Kline, 874 S.W.2d at 780.

2.       Mr.
Waite’s Actions that Invoke the Acceptance of Benefits Doctrine

Mrs. Waite points to three specific
actions she contends constitute Mr. Waite’s voluntary acceptance of the
benefits of the judgment.  First,
immediately after the judgment was entered, Mr. Waite demanded his entire share
of the Dean Witter community funds, totaling $862,997.27.  Second, Mr. Waite asserted his right to sole
ownership of the family residence, worth more than $300,000 at the time of
trial.  In connection with this, he
demanded that Mrs. Waite execute a warranty deed transferring all her ownership
interest in the property to him, and he filed the deed with the county
clerk.  Third, Mr. Waite accepted the
benefit of a $5,705 federal income tax refund issued on the parties’ joint tax
return, requiring Mrs. Waite to endorse it over to him.  In each instance, Mrs. Waite argues, Mr.
Waite has affirmatively relied on the validity of the judgment in asserting his
rights against her, and therefore he is estopped to challenge it.  

The evidence confirms that Mr. Waite took
the actions of which Mrs. Waite complains. 
Therefore, unless Mr. Waite satisfies an exception to the acceptance of
benefits doctrine or otherwise shows that it does not apply, we must agree with
Mrs. Waite that Mr. Waite’s actions in accepting a substantial portion of the
judgment bars him from appealing that same judgment he now attacks.  

3.       Mr.
Waite Claims He Falls Within One of Two Exceptions to the Acceptance of
Benefits Doctrine

Mr. Waite does not deny he accepted these
benefits.  However, he contends that the
acceptance of benefits doctrine does not bar his appeal because (1) he accepted
the benefits out of economic necessity; and (2) a reversal of the judgment will
not affect his rights to the benefits he has received.  We address each argument in turn. 








a.       The
evidence does not show that economic necessity compelled Mr. Waite to accept
the benefits.

Mr. Waite first argues that he accepted
the identified benefits of the judgment out of economic necessity.  In support of this, Mr. Waite relies upon (i)
his affidavit, and (ii) an argument that this exception should be liberally
applied.[6]  We disagree that Mr. Waite’s affidavit
evidences economic necessity, and we find the authorities he cites in support
of his argument for a liberal application of the economic necessity exception
distinguishable on these facts.

(i)      Mr.
Waite’s affidavit

In his affidavit in support of his
economic necessity argument, Mr. Waite states that he needed the money he
received from the court’s registry 

·                     
to
pay his daily living expenses and the costs of his appeal, and 

·                     
to complete repairs on the family home awarded to him as
his separate property.[7]  








He also states that the tax refund involved the return
of money he advanced as the result of an accounting error by his CPA, and so he
received no benefit from its return. 
Finally, he states that he has not sold or refinanced the house, or
taken a loan against it.  

Mr. Waite argues that his affidavit
unequivocally establishes the economic circumstances rendering his acceptance
of the benefits of the judgment involuntary. 
We disagree.  The affidavit is
largely conclusory; it contains almost no factual support for Mr. Waite’s
assertion of economic necessity.  

For example, Mr. Waite offers few
specifics to support his initial contention that he needed the entire award of
over $800,000 to pay his daily living expenses. 
He states generally that he had to pay for such things as food,
clothing, rent, and insurance, but does not specify how much these items cost
or list specific bills.  Mr. Waite also
states that he had to pay various expenses related to his appeal, but lists only
a specific amount for past due attorney’s fees of $144,000.[8]  Similarly, he states in conclusory fashion that
he needed the money to complete repairs to the house he was awarded and to
“pursue [his] employment as a remodeler.” 
But, he does not identify any costs associated with these enterprises,
nor does he aver that the repairs to the house were necessary or that he risked
economic hardship if the money was not made available to him for these
purposes. 








Mr. Waite’s claim of financial hardship is
further undercut by the complete absence of any statement in his affidavit that
he was unemployed or had no other sources of income.  Mrs. Waite points out that the trial court
found that Mr. Waite had substantial earning capacity and employment
opportunities.  The court’s finding was
expressly based on two facts: (1) Mr. Waite’s work experience as a broker for
Dean Witter Reynolds, for which he earned a yearly salary in excess of $200,000
per year; and (2) Mr. Waite’s service on the board of directors for the Harvest
Foundation, for which he “receives substantial compensation.”  The trial court also found that “Mr. Waite
has received income from a charitable fund, known as the Harvest Foundation,
during the life of this litigation, and he is entitled to continue receiving
substantial income from the Harvest Foundation.”  Mr. Waite complains that these fact findings
relate to irrelevant past circumstances. 
We disagree with this characterization. 
We also note that Mr. Waite does not deny the statements or direct us to
any controverting evidence in the record.[9]  

Mr. Waite’s affidavit also contains no
assertions of economic necessity requiring him to accept the benefit of the
judgment awarding him the tax refund. 
Merely because the tax refund reimbursed him for an earlier advance of
funds does not make its return an economic necessity.  

Similarly, Mr. Waite identifies no
economic necessity requiring him to demand that Mrs. Waite execute a warranty
deed transferring the house to him.  And
Mr. Waite’s assertion that he has not sold, refinanced, or taken a loan against
the house cuts against his economic necessity argument, because if Mr. Waite
was truly suffering financial duress he would do—or at least consider doing—one
of these things.[10]


For these reasons, we conclude Mr. Waite’s
affidavit does not prove that he accepted the benefits because of economic
necessity.

(ii)      Mr.
Waite’s argument against strict application of the exception








Although we have already concluded that
Mr. Waite did not accept the benefits because of economic necessity, we briefly
want to respond to Mr. Waite’s emphatic claim that he does not deserve such a
result and that, in any event, the doctrine should not be strictly applied.

First, the cases Mr. Waite primarily
relies on to argue that the doctrine should not be strictly applied—Haggard
v. Haggard and Trevino v. Trevino—are distinguishable from this
case.  See Trevino v. Trevino, 555
S.W.2d 792 (Tex. Civ. App.—Corpus Christi 1977, no writ); Haggard v. Haggard,
550 S.W.2d 374 (Tex. Civ. App.—Dallas 1977, no writ).  In Haggard, the former wife accepted
four $100 checks, and in Trevino, the former wife accepted $5,000, which
was only part of the amount awarded to her. 
See Trevino, 555 S.W.2d at 795; Haggard, 550 S.W.2d at
376.  Here, Mr. Waite did not accept the
relative equal of four $100 checks or $5,000.[11]   Mr. Waite took close to one hundred percent
of the total community property he was awarded and all of the community cash he
was awarded.[12]  We have not found a case like this in which a
court has refused to apply the doctrine, and he has cited none.

Second, although we mentioned this
earlier, it bears repeating.  Mr. Waite’s
affidavit is bereft of details.  An
individual who truly needs an award of money can obtain it and still appeal
simply by filing a comprehensive affidavit.[13]  

b.       A
reversal may affect Mr. Waite’s rights to the benefits he accepted








Mr. Waite also contends he falls within
the second exception to the acceptance of benefits doctrine.  That exception applies when a reversal of the
judgment being appealed could not possibly affect an appellant’s right to the
benefits already accepted.  See Carle,
234 S.W.2d at 1004.  In essence, Mr.
Waite argues that he received such a paltry portion of the esstate that he
could not possibly be awarded less than he has already received.  As a result, the argument continues, his
rights to the benefits he has already accepted will not be affected.  Again, we disagree.

(i)      The
exception is narrow

This exception was discussed extensively
in Carle v. Carle, 234 S.W.2d at 1004. 
The Texas Supreme Court explained that a party who accepts benefits that
are undeniably his—so much that the opposing party would concede upon another
trial that the benefits are his—does not waive the right to appeal.  The doctrine also would not apply if,
for some other reason, the appellant’s rights in the awarded property could not
be affected on re-trial.  As the Carle
court noted, this exception is applied stingily.

The exception is
narrow.  Whether or not this case falls
within it must be determined from answers to these questions: Could a reversal
of the portions of the judgment referred to in these two certified questions
possibly affect appellant’s right to the benefits secured by him under the
judgment?  And would appellee be
compelled to concede upon another trial that appellant has the right to retain
those benefits regardless of the outcome of the litigation?

Id.  In
other words, the exception does not tolerate chance or uncertainty.  The appellant’s right to the property must be
unquestionable.

(ii)      Mr.
Waite’s case does not fit within the very narrow exception








With this framework in mind, we turn to
Mr. Waite’s claim.  It is, simply,
this.  The cash in the registry of the
court was not community property, but separate property.  Thus, if we were to hold that the property
was his separate property, he would keep all the cash already awarded to him
and it is “inconceivable” that he would be awarded less than the “paltry
percentages” he has already received.[14]  The record does not substantiate Mr. Waite’s
claims.

If we were to reverse because the trial
court erred in characterizing the cash as community, the trial court would
almost certainly re-divide the community property.  Mr. Waite fails to recognize that the court
divided the community property unevenly in part because of Mr. Waite’s abusive
behavior toward Mrs. Waite during their marriage.  Having made a just and right division based
on the cash being community, the trial court would have to re-divide the assets
to reach a new “just and right” division of the community estate.  See Tex.
Fam. Code § 7.001.  If we
reversed, we find it highly unlikely on the record before us that Mr. Waite
would keep all of the property he was awarded. 
In the words of another appellate court, “While [Mr. Waite] might
receive more, [h]e might also receive less.” 
See Bloom, 935 S.W.2d at 948.

In addition, if we were to hold that the
cash was Mr. Waite’s separate property and reverse the case, the chances are almost
certain that Mrs. Waite would dispute his right to all the funds.  In the trial court, Mrs. Waite had pleaded
alternatively that the funds be declared community or that, in the event they
were declared separate, she recover a portion of the funds as gifts or
reimbursement.  See Carle, 234
S.W.2d at 1004.

Thus, Mrs. Waite is not conceding an inch
and, on remand, we think it highly probable that the court would redivide the
estates.  These facts do not qualify for
the narrow exception.[15]

 








IV.      Conclusion

In summary, we overrule Mr. Waite’s
contention that the trial court’s exercise of jurisdiction over the divorce
violated his constitutional guarantees of religious freedom.  Mrs. Waite’s motion to dismiss is not
untimely because Texas Rule of Appellate Procedure 10.5(a) is a procedural rule
that does not apply to a motion to dismiss on the basis of the acceptance of
benefits doctrine.  We grant Mrs. Waite’s
motion to dismiss the appeal on the basis of the acceptance of benefits
doctrine because Mr. Waite accepted substantial benefits of the judgment he now
seeks to attack.  Also, the evidence does
not show that Mr. Waite falls within the economic necessity exception to the
acceptance of benefits doctrine, or that a reversal of the judgment would not
affect his rights to the property. 

We dismiss the appeal.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Opinion filed October 5, 2004.

Panel
consists of Justices Fowler, Edelman, and Seymore.











[1]  In the divorce
decree, Peggy’s last name was changed from Waite to Allen; however, for
consistency, the parties’ names appear as they did below.





[2]  Tex. Fam. Code § 7.001.





[3]  During the
course of this litigation, Mr. Waite also filed an interlocutory appeal to
challenge the trial court’s appointment of a receiver, which this court
dismissed as moot when the receivership was dissolved.  See Waite v. Waite, 76 S.W.3d 222
(Tex. App.—Houston [14th Dist.] 2002, no pet.). 
As discussed in more detail below, Mr. Waite also appealed the trial
court’s denial of his request for a temporary injunction on the basis that the
no-fault divorce statute is unconstitutional; this court affirmed that
ruling.  See Waite v. Waite, 64
S.W.3d 217 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Mr. Waite has also filed five mandamus
petitions.  See In re Daniel Waite,
No. 14-02-00116-CV; In re Daniel Waite, 14-02-00119-CV; In re Daniel
Waite, 14-02-00122-CV; In re Daniel Waite, 14-02-00564-CV; In re
Daniel Waite, 14-02-00711-CV.





[4]  In two other
issues, Mr. Waite challenges the trial court’s exclusion of evidence he
contends shows that an Alabama divorce Mrs. Waite obtained in 1960 before
marrying Mr. Waite was fraudulently obtained and therefore void.  Mr. Waite does not challenge the trial
court’s denial of his plea to the jurisdiction on this basis.  However, to the extent Mr. Waite may argue
the trial court lacked jurisdiction because the earlier divorce is void, we
find that contention without merit.  Mrs.
Waite placed in evidence her Alabama divorce decree.  During the divorce proceedings, Mr. Waite
filed suit in Alabama to collaterally attack the Alabama decree, but the
Alabama Supreme Court upheld the lower court’s dismissal of his action.  See Waite v. Waite, ___ So.2d ___, No.
2030017, 2004 WL 758394, at *1 (Ala. Civ. App. 2004).  Undaunted, Mr. Waite filed a second action in
Alabama to again challenge the decree. 
The lower court again dismissed the action on Mrs. Waite’s motion.  Although he has indicated that he will appeal
if the trial court does not vacate its order, Mr. Waite has not demonstrated
that his second action in any way affects the original decree of divorce or the
dismissal of his collateral attack.  See
id.; see also Alabama Power Co. v. Thompson, 32 So.2d 795, 800 (Ala.
1947) (noting that, under Alabama law, a judgment will operate as res judicata
or as estoppel notwithstanding an appeal when the appellate court action is
based on a review of the record made below). 






[5]  For example,
even if a couple chose to be married, but did not need or desire legal
recognition of their marriage, the couple still would not be able to avoid
entanglement with the law.  See Tex. Fam. Code  §§ 2.401–.405. 
If one of the couple should die before the other, the law would
prescribe how the remaining spouse would prove their marriage so the spouse
could claim ownership of their property. 
See id § 2.401.  If the
couple had children and the father died, the law would govern how the children
would prove heirship.  Only if the couple
chose to have no connection with society and achieved that goal, might they
avoid the laws applied by the State.





[6]  Mr. Waite also argues the trial
court had to disburse the cash that was in the court registry or else it would
be required to monitor the parties’ finances throughout the appeal and after
its plenary power had expired.  In making
this argument, Mr. Waite distinguishes this case from one in which the
appellant recovers funds from an opposing party pursuant to a judgment.  However, Mr. Waite cites no authority for
making an exception  to the acceptance of
benefits doctrine because the funds were in the court registry rather than
under the control of the parties. 
Indeed, at least one court determined that a party to a divorce was
estopped to appeal after moving the trial court to order the payment of funds
from the court registry.  See Nixon,
348 S.W.2d at 440–41.





[7]  The
substantive portion of Mr. Waite’s affidavit consists of the following:

 

“I have reviewed the Appellee’s Motion To Dismiss
filed in this case.  The funds I received
from the registry of the Court pursuant to the final judgment were needed by me
to pay my daily living expenses, including, but not limited to, food, utilities,
clothing, rent, taxes, gasoline, auto and homeowners insurance, health
insurance and other miscellaneous day to day living expenses.  In addition, I needed the funds to pay the
costs of my appeal including attorney’s fees, court courts [sic], and the
appeal bond, including the supercedeas bond. 
I have posted a supercedeas bond in the amount of $440,000.00 (nearly
half the amount received).  Without the
use of these funds, I could not have paid all of the financial obligations set
forth above and I could not have posted my supercedeas bond.  I paid $144,000.00 for past due attorney’s
fees and appellant [sic] attorney’s fees which were due and owing which I could
not previously pay due to the restrictive orders of the Court.  I also needed the funds to effectuate and
complete repairs on the house and to pursue my employment as a remodeler.  For these reasons the use of the funds I
received from the registry of the Court was not voluntary.

In addition, the funds I received from the IRS as set
fort in Appellee’s Motion To Dismiss were due to any [sic] accounting error by
my CPA.  I advanced the money that was
returned.  I received no “benefit” from
this return of funds.

Finally, I have not sold or refinanced the
subject property, nor have I taken a loan against it.”





[8]  Although Mr.
Waite states that he posted a bond for his appeal in the amount of $440,000, he
does not state whether he put up the full amount in cash or only paid a
percentage of it.





[9]   In his
Appellant’s Brief, Mr. Waite does not challenge the legal and factual
sufficiency of these findings of fact. 
In his reply brief, Mr. Waite complains about Mrs. Waite’s
characterization of the record and states generally that he “challenges” numerous
findings of fact, including these two, but does not individually address them
or cite to any contrary evidence in the record. 





[10]  We find Mr.
Waite’s affidavit to be in stark contrast to that in Gonzalez v. Gonzalez,
in which the court found that the former wife supported her claim of financial
duress with an affidavit in which she stated that she was destitute and had no
income, had lost her job, had to sell her car for a specified amount, used her
property as collateral to borrow money, and provided a detailed list of the
amounts of her debts and expenses.  See
Gonzalez, 614 S.W.2d at 204 n.1.  





[11]  The other
divorce cases he cited were similarly distinguishable.  See Harris v. Holland, 867 S.W.2d 86,
87 n.1 (Tex. App.—Texarkana 1993, no writ) (holding appellant not estopped when
at least some of cash was accepted because of economic necessity and a
redivision of the property would not affect her right to the cash received); Gonzalez,
614 S.W.2d at 204 (holding appellant not estopped when affidavit disclosed
acceptance of benefits was involuntary due to financial duress).





[12]  The money the
court awarded Mr. Waite constituted 90% of the estate.  





[13]  Mr. Waite also
could have left the money in the registry of the court and obtained money
during the appeal by requesting temporary support payments.  See Tex.
Fam. Code § 6.709; McAlister, 75 S.W.3d at 483 (noting that
accepting payments under temporary support orders does not constitute
acceptance of benefits). 





[14]  Mr. Waite
contends he received only 13% of the community estate, while Mrs. Waite
contends he received approximately 45%. 





[15]  Mr. Waite relied
primarily on Kline v. O’Quinn to argue that he fits within the second
exception.  That case contains a
completely different set of facts than we have here.  See Kline, 874 S.W.2d at 781. There,
O’Quinn moved to dismiss Kline’s appeal because Kline accepted compensatory
damages that O’Quinn paid under the judgment. 
However, Kline did not appeal the award of compensatory damages; she
appealed only the punitive damages and attorney’s fees the trial court deleted
from an arbitration award.  A reversal on
appeal would not change the compensatory damages already awarded; it would only
add the punitive damages or attorney’s fees or both.  See id.