

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00917-CV

Ziaunnisa K. **LODHI**,
Appellant

v.

Shah A. **HAQUE**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI04290
Honorable Rosie Alvarado, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: November 6, 2019

AFFIRMED

In this appeal from a divorce decree, appellant Ziaunnisa K. Lodhi asserts that the case was improperly tried in Bexar County because (1) neither she nor appellee Shah A. Haque were residents of Bexar County for ninety days preceding the filing of the original divorce petition and both parties reside in Harris County; (2) a Harris County court had dominant jurisdiction; and (3) a mandatory sixty-day waiting period measured from the date suit was filed had not run when the trial court granted the parties' divorce. Lodhi also asserts the trial court erred by awarding Haque attorney's fees in a pretrial sanctions order and in the divorce decree. We affirm.

**BACKGROUND**

In 2013, Lodhi and Haque were married in New York. In 2015, Haque filed for divorce in DeWitt County, Texas, and this case was later transferred to Harris County, where it was dismissed on February 14, 2017. Soon thereafter, Haque filed for divorce in Alaska, and Lodhi filed for divorce in New York. Eventually, these cases were dismissed. On March 8, 2017, Lodhi filed the present case for divorce in Bexar County. In her *pro se* divorce petition, Lodhi listed a Bexar County address underneath her signature, and, beneath that, a Victoria, Texas mailing address.

On August 22, 2017, the Bexar County trial court held a hearing, at which Lodhi testified that she had "moved to San Antonio." Following the hearing, the trial court ordered Haque to make payments to Lodhi for temporary spousal maintenance "starting September 1, 2017 for $800." The order stated it would remain in place for seventy-five days.

On October 5, 2017, Haque filed a counter-petition for divorce, in which he alleged that Lodhi had been a resident of Bexar County for the preceding ninety days.

On November 13, 2017, Lodhi filed a motion to clarify the temporary order for spousal support, seeking clarification regarding the duration of the order and frequency of payments. She also filed a motion for temporary spousal support, requesting $2,500 in temporary spousal support per month. Haque opposed the motions, and the trial court entered an order denying Lodhi's motion for temporary spousal support.[1]

On November 30, 2017, Lodhi, who by this time was represented by counsel, filed a motion to dismiss the divorce suit for lack of jurisdiction. Her motion asserts: "Ziaunnisa K. Lodhi currently resides in Harris County, Texas, and has resided there since August 1st, 2017." Lodhi argued that the trial court lacked jurisdiction because neither she nor Haque "ha[d] ever resided in

---

[1] The docket sheet shows that the trial court also denied Lodhi's motion to clarify.

Bexar County." Haque opposed the motion. On December 7, 2017, the trial court held an evidentiary hearing on the matter. On direct examination, Lodhi testified that she was not a resident of Bexar County when she filed her petition on March 8, 2017. On cross examination, Lodhi testified that she lived at the Bexar County address listed on the divorce petition, "[m]aybe a single day," but she moved out that same day because the couple she would share the apartment with were heavy smokers. Lodhi also testified that she intended to move to Bexar County, but she changed her mind and returned to New York after her mother had a stroke. Lodhi confirmed that she listed the address of the Bexar County apartment on the civil case information sheet and her request for process. Lodhi also testified that she had received a law degree in Pakistan, and her attorney represented that Lodhi was enrolled in a Master of Laws (L.L.M.) program at the University of Houston Law Center.

Haque also testified at the hearing. He stated that he signed a residential lease for an apartment in Bexar County on December 6, 2017, which was the day before the hearing. Haque testified that he intended to make Bexar County one of his residences. Haque also testified that he worked Mondays through Fridays in Harris County and planned to come to Bexar County on the weekends and apply for jobs in Bexar County. After hearing the testimony, the trial court orally denied Lodhi's motion to dismiss. The trial court also granted the request made by Lodhi's counsel to withdraw from representation. On December 14, 2017, the trial court signed an order denying Lodhi's motion to dismiss, stating: "The Court does not have enough information at this time to determine if abatement of the divorce cause of action is necessary or not."

On December 18, 2017, Lodhi, again acting *pro se*, filed a second motion to dismiss based on her failure to establish residency in Bexar County. Lodhi also filed a motion to transfer venue to Harris County, where she asserted she had lived for the past four months. The next day, an attorney who had not previously appeared for Lodhi filed a notice of appearance as Lodhi's

counsel. On December 22, 2017, the trial court signed an "Agreed Order to Abate Case to Establish Residency Requirement." Lodhi's new attorney and Haque's attorney signed the order and indicated their agreement "AS TO FORM AND SUBSTANCE." The order states:

> [T]he parties, through their undersigned counsel of record, . . . indicated to this Court the following evidentiary facts—
>
> [1]. At the time of filing this matter's Original Petition for Divorce, on or about March 8th 2017, neither [Lodhi] nor [Haque] had resided within Bexar County, Texas, for the prerequisite 90 day period of time, as required by Tex. Fam. Code §§ 6.301, 6.302; and
>
> [2]. As of December 21st 2017, neither [Lodhi] nor [Haque] have resided in Bexar County, Texas, for the requisite 90 days since the filing of this matter's Original Petition for Divorce on or about March 8th 2017.
>
> IT IS THEREFORE ORDERED that this case is abated until March 23, 2018, to allow either [Lodhi] and/or [Haque] to meet the necessary 90 day residency requirement, as mandated by Tex. Fam. Code §§ 6.301 and 6.302.

On January 18, 2018, Lodhi filed a petition for divorce in Harris County, initiating a new suit in that county. On February 20, 2018, Lodhi filed a motion in the Bexar County court to substitute her counsel of record with yet another attorney. On February 23, 2018, Lodhi filed her third motion to dismiss based on the parties' purported failures to establish residency in Bexar County. In her motion, Lodhi argued the Bexar County court did not have "dominant jurisdiction," even though the Bexar County case was the first-filed case as compared to the recently filed Harris County case. On March 12, 2018, Lodhi filed a notice of nonsuit in the Bexar County case.

The abatement period in the Bexar County case ended on March 23, 2018, and, three days later, Haque filed a response to Lodhi's third motion to dismiss and a request for sanctions. Haque also filed, on March 26, 2019, a third amended counter-petition for divorce, in which he alleged his residency in Bexar County for the preceding ninety-days.[2]

---

[2] Haque had previously filed a second amended counter-petition.

On March 29, 2018, the trial court held a hearing on Lodhi's motion to dismiss and Haque's request for sanctions. During a brief examination by Lodhi's counsel, Haque testified that he had continuously resided in Bexar County since December 6, 2017. Before Haque's attorney began his examination, Lodhi's counsel stated: "Out of convenience to the Court, we'll stipulate that [Haque has] lived in Bexar County since December 6th of 2017." Haque's counsel then questioned Haque regarding expenses Haque had incurred related to divorce proceedings brought in various courts. Lodhi then testified. She stated that she resided in Harris County when she filed her second motion to dismiss on December 18, 2017. As to the Bexar County address listed on Lodhi's original petition, filed on March 8, 2017, Lodhi stated: "I was there, yes, but I did not live there 90 days." Next, Haque's counsel testified regarding attorney's fees. At the conclusion of the hearing, the trial court denied Lodhi's motion to dismiss and granted Haque's motion for sanctions, ordering Lodhi to pay $6,000. On April 12, 2018, the trial court signed an order to that effect.

Lodhi, thereafter, filed a petition for divorce,[3] and, on April 30, 2018, Haque filed a fourth amended counter-petition for divorce. Prior to trial, the trial court realigned the parties. The trial court held a three-day bench trial, and, on May 29, 2018, the trial court granted the parties a divorce.

Lodhi now appeals the sanctions order, signed on April 12, 2018, and later confirmed in the divorce decree, and the divorce decree. We address first Lodhi's issues pertaining to the trial court's authority to entertain the divorce suit, and then we address her challenges to the monetary awards against her in the divorce decree and in the sanctions order.

---

[3] She had nonsuited her previous petition.

**THE NINETY-DAY RESIDENCY REQUIREMENT**

In her first issue, Lodhi argues that the trial court should have dismissed the case because neither she nor Haque were residents of Bexar County for ninety days before Lodhi filed her original petition for divorce on March 8, 2017, and because both she and Haque continue to reside in Harris County.

Texas Family Code section 6.301 provides:

A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:

(1) a domiciliary of this state for the preceding six-month period; and

(2) a resident of the county in which the suit is filed for the preceding 90-day period.

TEX. FAM. CODE ANN. § 6.301(2).

"Although section 6.301 is not itself jurisdictional, it is akin to a jurisdictional provision because it controls a party's right to maintain a suit for divorce and is a mandatory requirement that cannot be waived." *In re Green*, 385 S.W.3d 665, 669 (Tex. App.—San Antonio 2012, orig. proceeding). Therefore, a trial court cannot maintain a divorce suit unless the requirements of domicile and residence under section 6.301 are satisfied. *Id.* "Typically, when the residency requirements under section 6.301 have not been met, the trial court abates the suit so that the residency requirements can be met." *Id.* at 670. However, if the record contains no indication that either party intends to move to the county where the case was filed, abating the suit will not result in the residency requirements being satisfied and the case should be dismissed. *Id.*

The question of residency is a fact issue for the trial court to determine, and a trial court's finding regarding residency will not be disturbed unless there is a clear abuse of discretion. *Id.* at 669. An abuse of discretion with respect to a factual matter occurs if the record establishes that the trial court could have reasonably reached only one decision. *Id.* at 668–69. However, "a trial

court has no discretion in determining what the law is or applying the law to the facts, and a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 669 (citation omitted).

Lodhi contends the trial court should have dismissed the case because neither she nor Haque were residents of Bexar County for ninety days before Lodhi filed her original petition on March 8, 2017. While this may be true, the trial court could have abated the suit so that the residency requirement of section 6.301 could have been met, which is what the trial court did here. *See id.* at 670. The trial court entered an agreed order, abating the case for ninety days after Haque testified that he intended to make Bexar County one of his residences. The ninety-day abatement period elapsed, the case was reinstated, and Haque filed an amended petition alleging, "Shah A. Haque has . . . been a resident in Bexar County, Texas for the preceding ninety-day period." This amended petition "constitute[d] the filing of a new suit" for purposes of section 6.301. *Whiteman v. Whiteman*, 682 S.W.2d 357, 358 (Tex. App.—Dallas 1984, no writ) (per curiam). Under these circumstances, the trial court could have found that Haque had established the section 6.301 residency requirement during the abatement period, even though the residency requirement had not been established when Lodhi first filed suit. *See Green*, 385 S.W.3d at 670; *see also Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, at *1 (Tex. App.—San Antonio Nov. 12, 2003, no pet.) (mem. op.) (holding trial court properly abated divorce proceedings until a party to the proceedings met the section 6.301 domiciliary requirement).

Lodhi also challenges the trial court's finding on residency, asserting, in her brief, that she and Haque "continue to reside in Harris County, Texas." According to Lodhi, the record shows that Haque signed an apartment lease in Bexar County to "deceive" the trial court on the advice of his attorney. Lodhi also argues that Haque could not have established a Bexar County residence because he worked in Harris County Mondays through Fridays. Haque responds that the record

does not show deception and that the evidence supports the trial court's finding. We agree with Haque.

At the beginning of trial, Haque's attorney gave his summary of the procedural history of the case. Counsel stated that, prior to the December 7, 2017 hearing on Lodhi's first motion to dismiss:

> [W]e had [Haque] go and rent an apartment, like the night before the hearing[.] . . . December 6th [Haque] signs a lease here for an apartment in Bexar County because—in case the Court found that, you know, [Lodhi] didn't really live here.

Later at trial, Haque testified that he moved to San Antonio on December 6, 2017, and signed a six-month residential lease, which he maintained on a month-to-month basis at the time of trial. Haque also testified that he was enrolled in a microbiology class at San Antonio College, which met on Saturdays. Haque identified, and the trial court admitted, copies of Haque's driver's license, which lists his San Antonio address; his San Antonio Public Library card; his grade report from San Antonio College; his Bexar County voter registration application; his Bexar County voter registration certificate; and a letter from the Harris County Voter Registrar stating that Haque's voter registration had been canceled in Harris County. Haque also testified that he donated blood in San Antonio, and the trial court admitted a receipt from April 2018, listing Haque as a blood donor. In addition, Haque produced receipts for food, gasoline, household supplies, and internet service purchased in Bexar County in January, February, March, and May 2018. Haque also testified that he wished to live and pursue his career in San Antonio and that he had applied for jobs in the area, including with the San Antonio Independent School District. Haque testified that he worked as a chemistry teacher in the Houston Independent School District and that his contract ran through June 2018. He testified that when he was in Houston for work, he stayed with a friend. Haque stated that he owned a house in the Houston area, but that he rented it to another friend.

Haque identified the lease contract he signed with his friend, and the trial court admitted the contract into evidence.

Based on this evidence, the trial court did not abuse its discretion by finding that Haque resided in Bexar County during the ninety-day abatement period. While Haque's intent to move to Bexar County may have been influenced by the pending divorce case and encouraged by Haque's attorney, these explanations for Haque's move do not show that his move was a "deception." The trial court could have reasonably believed Haque's testimony regarding his activities and contacts with San Antonio, which Lodhi did not try to discredit with conflicting evidence. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000) ("[T]he factfinder . . . is the sole judge of the witnesses' credibility and the weight to be given their testimony, and is free to resolve any inconsistencies."); *cf. In re Doe 4*, 19 S.W.3d 322, 325 (Tex. 2000) ("Acting as factfinder, a trial judge can . . . reject the uncontroverted testimony of an interested witness unless it is readily controvertible, it is clear, positive, direct, and there are no circumstances tending to discredit or impeach it."). The trial court reasonably could have determined from Haque's testimony and evidence that Haque lived in Bexar County primarily on weekends and that Haque intended to establish a career in Bexar County. Haque obtained an apartment, registered to vote, enrolled in community college, gave blood, signed up for a library card, and initiated a local job search. These activities are indicia of residency. *See McAlister v. McAlister*, 75 S.W.3d 481, 485 (Tex. App.—San Antonio 2002, pet. denied) (determining divorce petitioner had established dual residency through an apartment lease, bills, and school records pertaining to one residence, even assuming she spent ninety percent of her time at the other residence). Moreover, Haque explained his intent to pursue school and a career in Bexar County. *See Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005) (orig. proceeding) ("The test for 'residence' or 'domicile' typically involves an inquiry into a person's intent."). Certainly, Haque maintained

strong ties to Houston during the abatement period; however, these ties did not prevent Haque from establishing a Bexar County residence because "[t]here are no limits on the number of residences that a party may maintain at any one time." *Griffith v. Griffith*, 341 S.W.3d 43, 53 (Tex. App.—San Antonio 2011, no pet.) (alteration in original) (citation omitted); *see also McAlister*, 75 S.W.3d at 485 ("[F]rom the fact that there can be but one domicile and several residences, the supreme court has concluded that the element of 'intent to make it a permanent home' is not necessary to the establishment of a second residence away from the domicile." (citation omitted)). Based on this record, we hold the trial court did not abuse its discretion by finding that Haque resided in Bexar County for ninety days before he filed his third amended counter-petition for divorce after the abatement period ended. We overrule Lodhi's first issue.[4]

## THE SIXTY-DAY WAITING PERIOD

In her sixth issue, Lodhi argues the trial court breached a post-filing waiting period by granting a divorce twenty-eight days after Haque filed a "proper petition alleging domicile and residency." Lodhi argues the trial court had no jurisdiction based on Texas Family Code section 6.702, which provides:

> (a) Except as provided by Subsection (c),[5] the court may not grant a divorce before the 60th day after the date the suit was filed. A decree rendered in violation of this subsection is not subject to collateral attack.

Section 6.702, like section 6.301, is mandatory but not jurisdictional; however, a trial court's failure to abide by section 6.702 may require reversal. *See, e.g.*, *Gutierrez v. Davila*, No. 04-09-

---

[4] Lodhi also argues, in connection with her first issue, that the trial court did not hold an evidentiary hearing to determine residency. We reject this argument because the record reflects that the trial court took evidence on residency at trial and at the hearing on Lodhi's third motion to dismiss held after the abatement period had ended. Additionally, Lodhi's counsel stipulated at the hearing on Lodhi's third motion to dismiss that Haque had lived in Bexar County since December 6, 2017. We do not address Haque's alternative argument that Lodhi waived her complaint regarding the section 6.301 residency requirement by filing a petition for divorce in Bexar County. *See* TEX. R. APP. P. 47.1.

[5] Subsection (c) lists the circumstances in which a waiting period is not required, none of which are applicable here.

00745-CV, 2010 WL 4882762, at *3 (Tex. App.—San Antonio Dec. 1, 2010, no pet.) (mem. op.) (reversing for a trial court's failure to comply with section 6.702).

Lodhi argues that the sixty-day waiting period should be calculated from the date Haque filed his fourth amended counter-petition on April 30, 2018, rather than the date Haque filed his third amended counter-petition on March 26, 2018. If calculated from April 30, 2018, the sixty-day waiting period is not met because only twenty-eight days elapsed from the date Haque filed his fourth amended counter-petition until the date the trial court orally granted the parties' divorce on May 29, 2018. If calculated from the date Haque filed this third amended counter-petition on March 26, 2018, the waiting period is met because sixty-four days elapsed.

Lodhi's arguments for calculating from the fourth amended counter-petition are unmeritorious. First, Lodhi ignores Haque's third amended counter-petition when she asserts in her brief: "The first effective request for a divorce was contained in the Fourth Amended Counter Petition for Divorce filed on April 30, 2018." While the fourth amended counter-petition contains an effective request, so too does Haque's third amended counter-petition, which states that Haque had been a resident of Bexar County for the preceding ninety days. *See* TEX. FAM. CODE ANN. § 6.301; *Hoffman v. Hoffman*, 821 S.W.2d 3, 5–6 (Tex. App.—Fort Worth 1992, no writ) (holding that a trial court should abate a divorce proceeding until a petitioner meets the domiciliary and residency requirements, at which point the petitioner may file an amended petition showing compliance with the requirements).

Second, Lodhi argues that the date an amended petition is filed is the date used for calculating the duration of residency under section 6.301. Lodhi is correct that the ninety-day residency requirement of section 6.301 is calculated from the date an amended petition is filed after an abatement period ends because the filing of the amended petition "constitutes the filing of a new suit" for purposes of section 6.301. *Whiteman*, 682 S.W.2d at 358; *see also Hoffman*, 821

S.W.2d at 5–6; *Gutierrez*, 2010 WL 4882762, at \*2 ("After the amended petition is filed [following abatement to meet the ninety-day residency requirement of section 6.301], the sixty-day waiting period required by section 6.702 begins to run, and the parties must wait sixty days before the divorce may be properly granted."). However, using an amended petition to calculate the "filing" date for purposes of 6.301, does not imply that any amended petition restarts the sixty-day waiting period for purposes of section 6.702.[6] We overrule Lodhi's sixth issue.

## DOMINANT JURISDICTION

In her second and third issues, Lodhi argues that the Bexar County case should have been dismissed because the Harris County court had "dominant jurisdiction" after Lodhi filed her case in Harris County in January 2018.[7] Lodhi argues that the Bexar County divorce petition and counter-petition were not ripe when filed and "dominant jurisdiction cannot be conferred on a court by the filing of a claim unless the claim was ripe when the filing was made."[8]

"As a general rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction, and the other case should be abated." *In re Archer Directional Drilling Servs. LLC*, No. 04-13-00692-CV, 2013 WL 6730095, at \*2 (Tex. App.—San Antonio Dec. 20, 2013, orig. proceeding [mand. denied]) (mem. op.) (citation omitted).[9] The Texas Supreme Court has "recognized three exceptions to the 'first-filed' rule of dominant jurisdiction: (1) an inability to bring all parties before the court in the first suit;

---

[6] In her brief, Lodhi cites only *Hoffman v. Hoffman*, 821 S.W.2d 3 (Tex. App.—Fort Worth 1992, no writ), to support her argument; however, *Hoffman* does not concern section 6.702 or an amended pleading.

[7] We consider Lodhi's second and third issues together because each concern dominant jurisdiction and because it is unclear where one issue ends and the next begins.

[8] Lodhi also argues that Haque "should be estopped from asserting the jurisdiction of Bexar County as he lives and works in Harris County." The trial court did not abuse its discretion by finding that Haque resided in Bexar County, as previously determined in issue one.

[9] "Dominant jurisdiction is a common law concept which is not based upon lack of jurisdiction, but on the grounds of comity, vexatious litigation, or the avoidance of a multiplicity of suits." *Ault v. Mulanax*, 724 S.W.2d 824, 828 (Tex. App.—Texarkana 1986, orig. proceeding).

(2) a lack of intent to diligently prosecute the first-filed suit; and (3) conduct by a party that estops it from asserting prior active jurisdiction." *Id.* (citing *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988)). "In circumstances where a party files suit prematurely but in good faith, the party may re-file or amend but for the purposes of determining dominant jurisdiction the amended pleading does not relate back to the original date of filing." *In re Bludau*, No. 09-10-00036-CV, 2010 WL 395964, at *2 (Tex. App.—Beaumont Feb. 4, 2010, orig. proceeding) (mem. op.) (per curiam) (citing *Perry v. Del Rio*, 66 S.W.3d 239, 253 (Tex. 2001)). A party may call attention to a court's lack of dominant jurisdiction through a plea in abatement, and the trial court may properly dispose of the plea in abatement by abating or dismissing the cause if the court lacks dominant jurisdiction. *See Perry*, 66 S.W.3d at 252; *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding); *Gordon v. Jones*, 196 S.W.3d 376, 385 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court's ruling on a plea in abatement is reviewed under an abuse of discretion standard. *See Rodriguez v. Rodriguez*, No. 04-09-00101-CV, 2010 WL 816186, at *1 (Tex. App.—San Antonio Mar. 10, 2010, pet. denied) (mem. op.); *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 293 (Tex. 2016) (orig. proceeding) ("We conduct our dominant-jurisdiction analysis under the deferential abuse-of-discretion standard.").

Lodhi argues that the Bexar County court lacked dominant jurisdiction "because the divorce [proceeding] was not ripe as the residency requirement of Section 6.301 of the Texas Family Code had not been met at the time the suit was filed." On March 8, 2017, and again on October 10, 2017, when Lodhi and Haque filed their petition and counter-petition for divorce, respectively, both petitions were prematurely filed because neither party had established the ninety-day residency requirement. *See* TEX. FAM. CODE ANN. § 6.301; *Svensen v. Svensen*, 629 S.W.2d 97, 98 (Tex. App.—Dallas 1981, no writ) ("[A] petition that fails to allege the completion of the residency requirement may be attacked by plea in abatement as premature."). As discussed

above in connection with issue one, the Bexar County court properly abated the case because both petitions were prematurely filed.

The Harris County case was the first case that was not filed prematurely.[10] The Harris County case was filed on January 18, 2018, and the first petition in the Bexar County case that was not prematurely filed was Haque's third amended counter-petition, filed on March 26, 2018. As the first case that was not filed prematurely, the Harris County case is the first-filed case for our dominant jurisdiction analysis. *See Perry*, 66 S.W.3d at 253 (explaining that, when a claim is filed prematurely, an amended pleading asserting a ripe claim "should be treated for purposes of determining dominant jurisdiction as a new suit as of the time it is filed, but not relating back to the commencement of the action"); *cf. In re Bludau*, 2010 WL 395964, at *2 (determining that dominant jurisdiction did not reside with a court in which a prematurely-filed divorce petition was filed).

However, even though we consider the Harris County case the first-filed case for our dominant jurisdiction analysis, this determination does not end our analysis. The "first-filed" rule of dominant jurisdiction has three exceptions: "(1) an inability to bring all parties before the court in the first suit; (2) a lack of intent to diligently prosecute the first-filed suit; and (3) conduct by a party that estops it from asserting prior active jurisdiction." *In re Archer*, 2013 WL 6730095, at *2 (citing *Wyatt*, 760 S.W.2d at 248). The last exception could apply here. Estoppel is a fact issue that must be determined by the trial court. *Rodriguez*, 2010 WL 816186, at *1.

We hold that the trial court did not abuse its discretion by refusing to dismiss the Bexar County case because the trial court reasonably could have determined that Lodhi's conduct estopped her from asserting the dominant jurisdiction of the Harris County court. First, Lodhi

---

[10] Lodhi testified that she moved to Harris County in August 2017, and Haque does not contest this assertion.

herself sought the Bexar County court's jurisdiction by filing in Bexar County. She sought and obtained temporary spousal support in Bexar County after asserting at a hearing that she had "moved to San Antonio." Lodhi did not notify the Bexar County court at the time of the hearing in August 2017, that she resided only in Harris County. Lodhi later filed two motions to dismiss, asserting a Harris County residency, but then agreed to an order to abate in the Bexar County court "to allow either [Lodhi] or [Haque] to meet the necessary 90 day residency requirement." Only after agreeing to abatement did Lodhi file suit in Harris County and seek dismissal of the Bexar County suit. Under these circumstances, it was within the trial court's discretion to decide whether Lodhi's conduct estopped her from asserting the dominant jurisdiction of the Harris County court. *See Bonacci v. Bonacci*, 420 S.W.3d 294, 298–99 (Tex. App.—El Paso 2013, pet. denied) (holding a party's conduct, including filing a counter-petition for divorce, executing a Rule-11 agreement agreeing to venue in the court, and participating in mediation, estopped the party from asserting the dominant jurisdiction of another court); *Howell v. Mauzy*, 899 S.W.2d 690, 698 (Tex. App.— Austin 1994, writ denied) (holding a trial court did not err when it determined a party was estopped from asserting the dominant jurisdiction of another court when the party represented in court filings and at a hearing that the trial court had jurisdiction). Accordingly, the trial court did not err by retaining the Bexar County case. *See In re Archer*, 2013 WL 6730095, at \*2; *see also Hailey v. Paduh*, No. 04-12-00823-CV, 2014 WL 1871334, at \*7 (Tex. App.—San Antonio May 7, 2014, no pet.) (mem. op.) ("If the servient court determines the estoppel exception applies, it may assume dominant jurisdiction and proceed to judgment."). We overrule Lodhi's second and third issues.

## ATTORNEY'S FEES AWARD

Lodhi argues in her fourth issue that the divorce decree should be reversed to the extent that it awards Haque $45,000 for attorney's fees because it was not based on a properly pled or proved cause of action and was not supported by proof of any attorney's fees incurred in other

cases. Specifically, Lodhi argues that Haque did not prove his abuse-of-process claim. Haque responds that the trial court awarded him attorney's fees as part of the division of community property in this case and that he proved he incurred attorney's fees of over one hundred thousand dollars in this case.

In the divorce decree, the trial court found that Lodhi had abused process by "ma[king] multiple filings in multiple jurisdictions for the same cause of action in an attempt to bolster spousal support payments." Based on this finding: "Shah A. Haque [was] awarded a judgment for attorney's fees in the amount of forty-five thousand dollars ($45,000.00) against Ziaunnisa K. Lodhi." In the next paragraph, the trial court ordered:

> **IT IS ORDERED AND DECREED** that Shah A. Haque is awarded judgment against Ziaunnisa K. Lodhi in the amount of forty-five thousand dollars ($45,000.00) with interest at the rate of five percent (5%) per year, compounded annually from the date of the judgment, for which let execution issue. **IT IS FURTHER ORDERED AND DECREED** that this judgment is part of the division of the parties' community property and does not constitute, nor shall its existence be interpreted as, any form of spousal support or alimony.

The trial court's attorney's fees award was based on an abuse-of-process finding, but we agree with Haque that it also was ordered pursuant to a division of property. A trial court "has great discretion in deciding whether to award attorney's fees to either party and in determining the amount of attorney's fees to be so awarded" in a divorce suit. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 846 (Tex. App.—Texarkana 1996, writ denied); *see also Sheikh v. Sheikh*, No. 01-05-00218-CV, 2007 WL 3227683, at *11 (Tex. App.—Houston [1st Dist.] Nov. 1, 2007, no pet.) (mem. op.) (determining it was within a trial court's discretion in dividing community property to make a husband accountable for community funds expended on his wife's divorce attorneys based, in part, on the husband's abusive conduct).

Lodhi has only challenged the trial court's award of attorney's fees pursuant to an abuse-of-process finding. She has not challenged the award as a division of community property based

upon the trial court's "great discretion in deciding whether to award attorney's fees to either party." *Grossnickle*, 935 S.W.2d at 846.

If an appellant fails to challenge all possible grounds supporting the judgment or legal conclusion under attack, we must accept the validity of the unchallenged grounds and affirm the adverse ruling. *St. John Missionary Baptist Church v. Flakes*, 547 S.W.3d 311, 314 (Tex. App.—Dallas 2018, pet. filed) (en banc); *Estate of Purgason v. Good*, No. 14-14-00334-CV, 2016 WL 552149, at *2 (Tex. App.—Houston [14th Dist.] Feb. 11, 2016, pet. denied) (mem. op.). Because Lodhi does not address the award of attorney's fees as an exercise of the trial court's discretion in dividing community property, we affirm the trial court's award of fees on that basis. *See St. John*, 547 S.W.3d at 315. Accordingly, we overrule Lodhi's fourth issue.

### SANCTIONS AWARD

Lodhi asserts in her fifth issue that the trial court abused its discretion by awarding Haque $6,000 in attorney's fees as sanctions pursuant to Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code section 10.001(1). The trial court ordered Lodhi to pay attorney's fees in its April 12, 2018 order denying Lodhi's motion to dismiss and granting Haque's request for sanctions. It confirmed this $6,000 award in the divorce decree.

An order imposing sanctions is reviewed under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). Rule 13 permits sanctions against attorneys and parties who file groundless pleadings, motions, or other papers in bad faith or for the purpose of harassment. *See* TEX. R. CIV. P. 13; *Nath*, 446 S.W.3d at 362. Texas Civil Practice and Remedies Code section 10.001(1) provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry: (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]

TEX. CIV. P. & REM. CODE ANN. § 10.001(1). "[S]anctions under Chapter 10 can be awarded if the suit was filed for an improper purpose, even if the suit was not frivolous." *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 257 (Tex. App.—Austin 2007, no pet.). "While bad faith must be coupled with groundless pleadings to support sanctions under Rule 13, . . . an improper purpose alone is a sufficient predicate for sanctions under Chapter 10 . . . ." *Nath*, 446 S.W.3d at 366 n.14 (internal citations omitted).

The phrase "improper purpose" under chapter 10 encompasses "bad faith" under rule 13. *See Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 183–84 (Tex. App.—Texarkana 2011, no pet.) ("We construe the phrase 'improper purpose' as the equivalent of 'bad faith' under Rule 13."). "Bad faith entails more than 'simply bad judgment or negligence; rather, it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes.'" *Estate of Aguilar*, 492 S.W.3d 807, 814 (Tex. App.—San Antonio 2016, pet. denied) (citation omitted). "The relevant time period for determining bad faith or improper purpose is when the pleading was filed." *Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at \*14 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.).

"Generally, courts presume that pleadings and other papers are filed in good faith." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). "The party seeking sanctions bears the burden of overcoming this presumption of good faith." *Id.* Under both rule 13 and section 10.001(1), the trial court typically must hold an evidentiary hearing to make the necessary factual determinations about the party's or the attorney's motives and credibility. *See Gomer v. Davis*, 419 S.W.3d 470, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In some circumstances, a trial court may take judicial notice of the case file for purposes of ruling on a motion for sanction. *R.M. Dudley Constr. Co., Inc. v. Dawson*, 258 S.W.3d 694, 710 (Tex. App.—Waco 2008, pet. denied). "In reviewing sanctions orders, the appellate courts are not bound by a trial court's findings of fact and

conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion." *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). We will affirm a trial court's sanctions order if sanctions are supported under any legal basis. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 809 (Tex. App.—Austin 2010, no pet.).

Here, the trial court conducted an evidentiary hearing on Haque's request for sanctions. At the hearing, Lodhi testified that, when she filed her original petition in the case, she was not a resident of Bexar County. Lodhi acknowledged that, after filing, she received spousal support, as ordered by the Bexar County court. The trial court entered an order with findings after the hearing. It found that Lodhi "used a Bexar County, Texas residential address for the purposes of meeting the residency requirement in her Original Petition for Divorce that was not her residential address." The trial court also found that Lodhi received temporary spousal support payments, and that Lodhi filed her first motion to dismiss ten days after the trial court denied her motion for continued support. The trial court noted that it signed an "Agreed Order to Abate Case to Establish Residency Requirement," while Lodhi was represented by counsel. The trial court further noted that Lodhi filed a petition for divorce in Harris County and then filed a motion to substitute counsel and a motion to dismiss in the Bexar County case during the time of the agreed abatement. The trial court determined Lodhi's filings during the abatement period, "were groundless and brought in bad faith, for the purpose of harassment and to cause unnecessary delay and needless increase in the cost of litigation." The trial court further found:

> [] Ziaunnisa K. Lodhi's conduct has demonstrated that she has acted in bad faith by having filed suit for divorce in Bexar County, Texas, Albany, New York, and Harris County, Texas concurrently. Ziaunnisa K. Lodhi testified that the divorce actions she filed are currently pending in all three jurisdictions.
>
> [] Ziaunnisa K. Lodhi sought and received payment of temporary spousal support in this case in Bexar County, Texas and now seeks to dismiss the case claiming she

improperly filed the case is further evidence of her bad faith, harassment and seeking to cause unnecessary delay and needless increase in the cost of litigation.

We hold, on this record, the trial court did not abuse its discretion in awarding sanctions under Texas Civil Practice and Remedies Code section 10.001(1). The record adequately supports the trial court's determination that Lodhi filed motions during the abatement period, including her third motion to dismiss, for improper purposes, including to harass Haque and needlessly increase the cost of litigation. The record shows that Lodhi filed three divorce suits in three different jurisdictions, and all three were pending at the time Lodhi filed her third motion to dismiss. Lodhi filed in Bexar County despite not being a resident, and she filed in Harris County despite agreeing to an abatement in the Bexar County court so that either party could establish residency. Lodhi, moreover, listed a Bexar County address on her petition, testified at a hearing that she had moved to Bexar County, and later testified that she had not. Lodhi received spousal support payments after testifying about her move to Bexar County, and later denied her move after the trial court withdrew spousal support.

The trial court reasonably could have determined that Lodhi misrepresented her residency to maximize spousal support payments and simultaneously pursued lawsuits, without regard to residency requirements, in order to hale Haque to forums perceived by Lodhi to be more favorable to her. The trial court also could have reasonably concluded that Lodhi sought to harass Haque and needlessly increase his attorney's fees by postponing the ultimate resolution of the divorce and by requiring Haque to respond in multiple forums, including in the Bexar County court during an abatement period. Thus, the trial court did not abuse its discretion when it determined that Lodhi had improper purposes when she filed motions in the Bexar County court during the abatement period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1); *Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.) (upholding

- 20 -

sanctions award under section 10.001(1) when a party filed two cases asserting virtually identical claims in two courts where evidence suggested the party filed one suit to "improperly circumvent an imminent adverse ruling" by another court); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding a trial court reasonably could have determined that a party filed a lawsuit for an improper purpose when the party sued opposing attorneys and experts from another case on the eve of trial in that other case); *see also Alwazzan v. Alwazzan*, No. 01-16-00589-CV, 2018 WL 6382061, at \*23 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) ("[A divorce petitioner's] false statements in her affidavit and in her petition about her residency are, at a minimum, sufficient to support Rule 13 sanctions."); *Lumbermens Mut. Cas. Co. v. Garza*, 777 S.W.2d 198, 199 (Tex. App.—Corpus Christi 1989, orig. proceeding) ("[A]batement of an action not only precludes the trial court from going forward on a case, it prohibits the parties from proceeding in any manner until the case has been ordered reinstated.").[11]

Lodhi also complains that the $6,000 sanctions award is not justified by the costs incurred. She argues that the trial court awarded Haque attorney's fees related to matters beyond Lodhi's motion to dismiss. "The amount of sanctions awarded is left to the sound discretion of the trial court." *Aguilar*, 492 S.W.3d at 815 (citing *Low*, 221 S.W.3d at 619). At the hearing on Haque's request for sanctions, his attorney testified that he sought to recover fees related to responses to motions Lodhi filed during the abatement period and to hearings on those motions. The trial court's sanctions order was based, in part, on a finding that Lodhi had needlessly increased the costs of litigation by filing during the abatement period. Haque's attorney testified to the hours he spent on responding to these filings and to his hourly rate. Based on a review of the record, we cannot say the trial court abused its discretion by awarding Haque fees related to Lodhi's motion

---

[11] Because we affirm the award of sanctions pursuant to chapter 10, we do not address whether rule 13 could also support the award.

to dismiss and other filings that she made during the abatement period. *See Nath*, 446 S.W.3d at 363 (explaining that there must be a "direct nexus" between the offensive conduct and the sanction award and the sanction must be proportional to the misconduct); *Aguilar*, 492 S.W.3d at 816–17 (concluding sanctions were appropriate when they were a direct reimbursement for legal expenses incurred and were supported by evidence substantiating the amount). We overrule Lodhi's fifth issue.

## CONCLUSION

We affirm the trial court's final divorce decree and order awarding sanctions.

Rebeca C. Martinez, Justice